**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

WARREN R. KRAFT

Plaintiff,                                                     Civil Action.:

v.

WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A.
SERVICELINK FIELD SERVICES, INC. (formerly known as
FIS Field Services, Inc. and Black Knight Field Services), BLACK
KNIGHT INFOSERV, INC. (formerly known as Lender Processing
Services, Inc.), BLACK KNIGHT MANAGEMENT SERVICES
(formerly known as LPS Management, L.L.C.)(collectively referred
to herein as "LPS"), TOWNSHIP OF MIDDLETOWN NJ (a body
politic), BRIAN O'CALLIHAN, in his official capacity and individually,
JOHN DOES 1-10 (fictitious parties)

Defendants.

_____

_____

VERIFIED COMPLAINT FOR DECLAROTORY JUDGMENT AND INJUNCTIVE
RELIEF; CLAIMS FOR RELIEF AND JURY DEMAND

_____

Warren R. Kraft
(Pro Se Plaintiff)
randolphkraft@yahoo.com
7 Seneca Drive
Middletown, NJ 07748

Telephone: 347-557-4745

## PRELIMINARY STATEMENT

1. Pursuant to 42 U.S.C. 1983 Plaintiff Warren R. Kraft brings this action by way of Order to Show Cause seeking to preliminarily and permanently enjoin the Township of Middletown, New Jersey from enforcing any order to vacate or otherwise interfering with his occupation, habitation and residency of his home in violation of procedural due process under the Fourteenth Amendment to the United States Constitution.

2. Plaintiff seeks damages and injunctive relief against Defendants MT and BO for committing acts, under color of law, with the intent and purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States;

3. Pursuant to 15 U.S.C.A. 1692 et seq. Plaintiff brings claims against Defendants Wells Fargo and LPS for violations of the Fair Debt Collections and Practices Act.

4. Plaintiff brings other supplemental claims in this action against other Defendants.

## JURISDICTION

5. Jurisdiction of this Court is proper pursuant to 28 U.S.C. 1331 and 1343(a)(3)-(4), in that claims are brought under 42 U.S.C. 1983 for the redress of rights secured by the Fourteenth Amendment to the United State Constitution. This Court also has original jurisdiction for claims brought under 15 U.S.C.A. 1692 et seq. This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. 1367(a).

6. Plaintiff's claims for compensatory and punitive damages are authorized by 42 U.S.C. 1983; N.J. I,1; and N.J.S.A. 10:6-2, 59:3-1, 59:8-3, 59;9-4.

7. Plaintiffs' claims for attorney's fees, if applicable, is authorized by 42 U.S.C. 1988; N.J. 11 Const. art. I,1; and N.J.S.A 10:6-2, 59:9-5.

8. Plaintiff's claims for cost are authorized by Fed. R. Civ. P. 54(d)(1) and N.J.S.A 8 10:6-2(f)

9. Plaintiff's claim for a civil penalty are authorized by N.J.S.A. 10:6-2€

10. Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. 2201-2202; 42 U.S.C. 1983; N.J. Const. Art.I, 1; and N.J.S.A. 10;6-2.

11. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

## VENUE

12. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. 1391(b) because Plaintiff resides in the district, the Defendants are located in this district, and the acts and omissions giving rise to the claims herein occurred in this district.

## PARTIES

13. Plaintiff Warren R. Kraft resides at 7 Seneca Drive Middletown, NJ 07748.

14. Defendant Wells Fargo & Company is a nationwide, diversified, financial services company. Upon information and belief, its corporate headquarters are located in San Francisco, California. It is the parent company of Wells Fargo Bank, N.A.

15. Defendant Wells Fargo Bank, N.A. is organized as a national banking association under the laws of the United States. Upon information and belief, its corporate headquarters are located in South Dakota. It maintains multiple offices in the State of New Jersey for the purposes of soliciting applications for and making residential mortgage loans and engaging in other business activities.

16. Defendant Servicelink Field Services, Inc. (formerly known as FIS Field Services, Inc., LPS Field Services, Inc. and Black Knight Field Services), is a nationwide property services company. Upon information and belief its corporate headquarters is located at 1400 Cherrington Parkway Moon Township, PA 15108.

17. Defendant Black Knight Infoserv, Inc. (formerly known as Lender Processing Services, Inc.), is a nationwide property service company. Upon information and belief its corporate headquarters is located at 601 Riverside Avenue Jacksonville, FL 32204.

18. Defendant Black Knight Management Services (formerly known as LPS Management L.L.C.), is a nationwide property service company.

19. Upon information and belief Defendants Servicelink Field Services, Black Knight Infoserv, Inc and Black Knight Management are related companies, and either principal and/or subsidiary businesses of each other and as such are collectively referred to herein as "Defendant LPS". Defendant LPS is in the business of providing processing technology and property field services to clients, including mortgage lenders and financial institutions. The services of LPS include inspections, property validation for repairs and services and loss mitigation in connection with defaulted assets.

20. Defendant Township of Middletown NJ (hereinafter referred to as "Defendant MT" is a municipal corporation and body politic under the laws of the state of New Jersey with offices located at 1 Kings Highway Johnson Gill Annex Middletown, NJ 07748.

21. Defendant Brian O'Callahan (referred to hereinafter as "Defendant BO") is employed by the Township of Middletown, Defendant MT, in the Department of Building and Inspections as a Code Enforcement Officer. Defendant BO is being sued in his official capacity as an employee, agent and or servant of Defendant MT and individually.

22. Plaintiff does not know the true names of defendants DOES 1 through 10 property preservation service companies and/or contractors, inclusive, and therefore sues them by those fictitious names.

## FACTUAL ALLEGATIONS

23. Plaintiff has lived and resided at 7 Seneca Drive Middletown, NJ 07748 since May 1993 (excluding October 2014 to December 22, 2015) through the present.

24. On or about June 3, 1996 Plaintiff acquired ownership of his home by inheritance from his deceased father (see Deed recorded in the County of Monmouth NJ on 6/3/96 attached as Exhibit 'A").

25. On September 29, 2006 Washington Mutual NA, Defendant WF's predecessor in interest to the mortgage held on Plaintiff's home, commenced a property foreclosure action against Plaintiff Kraft, at al. in the Superior Court of New Jersey under Docket no. F-1724806.

26. Upon information and belief Defendant WF acquired the loan and mortgage from Washington Mutual, NA and began servicing the same after the debt was in default.

27. Upon information and belief Plaintiff's deceased father and ex-wife Laura A. Kraft were the original mortgagors of the mortgage Washington Mutual, NA held and was servicing at the time the aforesaid foreclosure was commenced.

28. Plaintiff's gas, electric and water utilities have been shut off for several years for non-payment. The outstanding electric bill has been $7,768.49 and the outstanding gas bill has been $13,317,90. The water utility was turned on for about three and a half months in 2014

29. Upon information and belief, Defendant WF engaged, hired and supervised Defendant LPS and Defendant John Does to conduct inspections and provide property field services related to Plaintiff's aforesaid residential property.

30. Upon information and belief, at all times relevant herein, Defendant LPS and Defendant John Does acted as agents, servants and or employees of and in concert with Defendant WF.

31. Upon information and belief, at all times relevant herein, Defendant WF engaged, supervised, guided, instructed and controlled Defendant LPS and Defendant John Does activities related to Plaintiff's property.

32. Upon information and belief, at all times relevant herein, Defendant LPS and Defendant John Does acting in concert with Defendant WF engaged, hired, employed, supervised and controlled individuals and contractors, who acted as agents, servants and or employees of Defendants WF, LPS and John Does related to Plaintiff's property.

33. In or about 2010 Plaintiff was issued a summons and complaint from Defendant MT after his grass became overgrown for not maintaining his lawn. He accepted responsibility and paid a fine.

34. Very shortly thereafter Defendants WF and LPS cut Plaintiff's lawn.

35. Upon information and belief Defendant MT communicated with Defendant WF about cutting the aforesaid lawn.

36. Upon information and belief, at all times relevant, continuing up through the six years immediately preceding the commencement of this lawsuit Defendants WF, LPS and John Does engaged in a pattern and practice of conduct, which resulted in the acts set forth in nos. 37-78 herein below.

37. Upon information and belief, Defendant LPS broke into Plaintiff's home in excess of 15 times and removed and changed locks on exterior doors in the front, back and garage doors on several of these occasions. Defendant LPS also broke the locks to a rear sliding glass door and a rear gate.

38. Plaintiff removed and replaced the aforesaid locks placed on Plaintiff's home by Defendant LPS.

39. From the time the foreclosure proceedings began up through the present Plaintiffs home has been furnished.

40. Defendant LPS during their multiple breaks ins to Plaintiff's home would discover, among other things, the following:

a. In the front foyer of Plaintiff's home a large antique Queen Anne chair, two full closets, and various paintings and drawings hung on the walls. One of these drawings- an heirloom, done by Plaintiff's grandfather a professional artist and former Director of the Art Department for The NY Mirror newspaper, is a self-caricature depicting him handing his heart to Plaintiff's grandmother.

b. In Plaintiff's family room a pull out couch, chairs, end table, coffee table, stocked book shelves encircling the room, dozens of framed family portraits hung on the walls and on built in shelving, and a large framed mirror on the wall. A large full screen television, cabinets containing personal belongings and other family heirlooms.

c. In Plaintiff's kitchen a small tiled top table, family photos covering the refrigerator doors, cabinets and pantries stocked with perishable and non-perishable food, a large framed painting and other art hung on the walls.

d. In Plaintiff's closet pantry an urn containing the remains of Plaintiff's deceased father, who served as the best man in Plaintiff's wedding.

e. In the rear vestibule a full closet, various personal belongings and a washer and dryer.

f. Three furnished bed rooms located upstairs each having a bed, clothing, photos, books, other furnishings, and full closets.

g. Plaintiff's study with a built in desk and wall of stocked book shelves.

h. A downstairs bed room used as a storage area full of personal belongings.

i. A dining room with a hutch and cedar chest.

j. A garage full of personal property.

41. During this period there were various automobiles in the driveway.

42. Upon information and belief, Defendant LPS in excess of 12 times trashed Plaintiff's home, strewing personal papers, hundreds of books and clothing on the floor.

43. Upon information and belief, Defendant in excess of 10 times removed all 3 mattresses in the upstairs bed rooms from the box springs and left them on the floor, flipped over and turned upside down.

44. Upon information and belief, Defendant LPS in or about April 2016 moved two of the bedrooms mattresses from the bed rooms and placed them in the garage.

45. Upon information and belief, Defendant LPS moved the television in the family room to the center of the room.

46. Upon information and belief, Defendant LSP would open the refrigerator doors in the kitchen.

47. Upon information and belief, during these intrusions Defendant LSP left open cabinets and closet doors often rummaging through the contents and strewing the same onto the floors.

48. Upon information and belief Defendant LPS on at least 4 occasions took all of Plaintiff's food from the kitchen, including canned food.

49. Upon information and belief Defendant LPS removed copper piping in the basement area from the home.

50. Upon information and belief, Defendant LPS removed a cedar chest, an heirloom from Plaintiff's deceased father, from the home, dumping its contents on the dining room floor.

51. Upon information and belief, Defendant LPS or Defendant John Does in or about January 2016 removed a framed painting hung on the kitchen wall from Plaintiff's home.

52. Upon information and belief, Defendant LPS removed a pair of boots and pants from the home and placed them in the yard near the driveway.

53. Upon information and belief, defendant displaced a modeled ship, a family heirloom, from shelving onto the floor, damaging the same.

54. Upon information and belief, Defendant LPS moved personal belongings within the home, including a drum from Plaintiff's master bedroom to a kitchen counter.

55. Upon information and belief, Defendant removed from Plaintiff's home a small unbroken and secure window in the front of his home facing the street and replaced it with a wooden board.

56. Defendant LPS's intrusions into Plaintiff's home occurred during the day when Plaintiff was not home.

57. Defendant LPS in excess of 12 times left written postings on the front door to Plaintiff's home.

58. None of the postings identified Defendant WF as the entity responsible for leaving the same. The posting has instructions to call 1877-617-5274, which is Defendant WF's Asset Management & Preservation Department.

59. None of the postings mention it pertains to the collection of a debt.

60. Many of the postings identified Defendant LPS as follows: "Service Link".

61. Some of the postings did not identify any entity responsible for leaving the same.

62. Upon information and belief, Defendant Defendants WF and LPS market and advertise their services to mortgage companies.

63. Upon information and belief, Defendant WF marketed and advertised their services to Washington Mutual NA.

64. Upon information and belief, Defendants LPS marketed and advertised their services to Defendants WF.

65. Upon information and belief, Defendants WF and LPS's aforesaid postings are contacts with Plaintiff, a consumer, and are attempts to facilitate communication with Defendant WF.

66. Upon information and belief Defendant WF as a mortgage servicer is a debt collector for defaulted loans that were in default at the time Defendant WF obtained them

67. Plaintiff contacted Defendant WF and Defendant LPS, collectively in excess of 15-20 times, informing them to stop entering his home, he is the owner occupant who lives and resides in his home (his two daughters lived with him previously but are now grown and living on their own in Ohio and Virginia, respectively).

68. Plaintiff contacted Defendant WF and Defendant LPS by telephone, collectively in excess of 20 times, informing them he lives and resides in his home.

69. During one of the conversations Defendant LPS told Plaintiff they did not have the authority to stop entering Plaintiff's home because Defendant WF was responsible for issuing the work orders and Defendant LPS had an obligation to do what their client

requested. Plaintiff was told he would have to contact Defendant WF because they were the only party who could stop them.

70. During some of the telephone discussions Defendant WF made disparaging remarks to Plaintiff about living and residing in his home without utilities.

71. Defendants WF and LPS knew or should have known not to enter and intrude into Plaintiffs home.

72. Numerous times Plaintiff encountered individuals at his home who had been sent by Defendants WF and LPS.

73. One early weekend morning when Plaintiff and his two daughters were sleeping he was awakened by voices and noise down stairs. Plaintiff went down stairs and encountered three men standing in the front foyer of his home. He asked them what they were doing in his house, requested they leave, opened the door and escorted them out. One of the men said "The bank sent us" and asked Plaintiff for identification. Plaintiff handed him his NJ Driver's License containing his address: "7 Seneca Drive Middletown, NJ 07748".

74. The man looked at Plaintiff's ID then walked around to the side of Plaintiff's home near the driveway and with a small silver portable camera took a picture of the empty meter box.

75. On another occasion Plaintiff encountered two men building a wooden cover over his pool, they said the bank required it be completed, and they did.

76. Subsequently the wooden cover collapsed into the pool gauging the bottom and boring a huge hole in the pool floor.

77. Defendants WF and LPS removed the inadequate cover and built another similar wooden cover.

78. This second wooden cover was inadequate and collapsed into the pool causing more damage.

79. In 2012 the Office of Inspector General for the Federal Housing Finance Agency conducted an investigation which disclosed systemic fraudulent practices in the property preservation inspections and field services industry (see copy of Office of Inspector General of FHFA memo of 12/26/12 attached as Exhibit " B ").

80. Plaintiff returned to his home on December 22, 2015 where he has been living and residing up through the present.

81. Plaintiff shortly after requested twice for his mail to be forwarded and delivered to his Middletown home by the U.S, Postal Service.

82. Plaintiff thereafter received some of his mail at his home (see i.e. letters dated 1/20/16 and 4/1/16 attached as exhibit "C").

83. Upon information and belief there has been some mail addressed and sent to Plaintiff at his home which has not been delivered.

84. Plaintiff spoke with Doreen a Supervisor at the Middletown NJ Post Office twice. Once on the phone and then in person. She did not offer nor did she help Plaintiff. She had no explanations for why Plaintiff was receiving some mail but not receiving some other mail.

85. Plaintiff spoke with the main carrier on his route. The carrier said he was not in the system. Plaintiff then showed post marked mail he received at his home address in Middletown. The carrier denied delivering this mail.

86. Plaintiff then made his second request to the U.S. Postal Service for all of his mail to be delivered to his home.

87. On or about May 2, 2016 at approximately 11:45 pm Plaintiff was at home sleeping in an upstairs bedroom.

88. Around this time Middletown Twp. Police forced entry into Plaintiff's home and into the bedroom where he was asleep.

89. Plaintiff was detained by police in his home. During this time an officer stated to Plaintiff "The bank says you are not allowed to be here".

90. Plaintiff informed the officers he lived and resided in his home.

91. The officers asked Plaintiff for identification.

92. Plaintiff presented his NJ State Identification containing his home address: "7 Seneca Drive Middletown, NJ 07748" (see copy of Plaintiff's NJ State ID attached as Exhibit" D").

93. The police then arrested Plaintiff and charged him with trespassing alleging a violation of NJSA 2C:18-3b.

94. The Middletown Police imposed on Plaintiff as a condition of bail a temporary restraint forcing him from his property and home, where he lives and resides, during the pendency of the case.

95. Thereafter in or about May 2016 Plaintiff wrote twice to the Middletown Postmaster requesting that all of his mail be held at the Middletown Post Office during the pendency of his case.

96. On May 23, 2016 Plaintiff met and talked with Gerald J. Massell, Middletown Municipal Prosecutor. Massell said: "The bank says they own the property".

97. Plaintiff offered the prosecutor a copy of his DEED to his property and a Middletown Real Property Tax List containing: Warren R. Kraft 7 Seneca Drive Middletown, NJ 07748. The prosecutor responded: "I don't need that".

98.  The case continued for another 56 days.

99. In or about early July 2016 Plaintiff met with John the Middletown Postmaster ("MP").

100. MP did not offer nor did he help Plaintiff with his mail delivery services.

101. MP told Plaintiff he had not and would not hold his mail.

102. MP said Plaintiff's house was vacant.

103. Plaintiff informed MP that was false.

104. Plaintiff reiterated to and informed MP he lives and resides in his Middletown home.

105. MP said he was talking with the Middletown Police.

106. Upon information and belief Defendant MT has and continues to interfere with Plaintiff's mail delivery services.

107. Plaintiff has filed complaints with the U.S. Postal Service regarding his mail service.

108. On July 18, 2016 the trespassing charge was dismissed by the Honorable James E. Berube, Jr., Middletown Municipal Judge.

109. The aforesaid trespassing charge was false.

110. Plaintiff was restrained and denied the right to use and enjoy his home, where he lives and resides, for a total of 77 days due to the false trespassing charge.

111. On July 18, 2016 after the false trespass charge was dismissed Plaintiff went home.

112. While at home Plaintiff observed a sticker on the front door to his home stating the structure was unfit for habitation "No sanitary utilities". Nothing on the sticker, dated: "May 31, 2016" identified who was the responsible party for placing it there.

113. Plaintiff removed the sticker and entered his home.

114. On August 8, 2016 when Plaintiff arrived home in the evening he observed a sticker on the front door stating it was from "Middletown Township". It stated the occupants are to vacate. While indicating the structure is unfit for habitation, it did not specify any particular condition.

115. Plaintiff removed this sticker from the front door to his home.

116. On August 31 and September 2, 2016 Plaintiff sent two letters to the Defendant MT informing them he is not vacating his home and would remain living and residing in his home.

117. Plaintiff also informed Defendant MT he had filed Chapter 7 Bankruptcy on September 1, 2016 and was in the process of getting his utilities on (see copies of aforesaid letters and Bankruptcy Petition attached as Exhibit "E").

118. Defendant MT's Code Enforcement Officer Brian O'Callahan, Defendant BO, sent Plaintiff an undated letter, postmarked September 7, 2016. Defendant MT's letter in its essence demands Plaintiff to immediately vacate his home and relinquish his residency under the threat of arrest (see copy of 9/7/16 letter attached as Exhibit "F").

119. Upon information and belief, Defendant BO is aware Plaintiff had been charged for trespassing as mentioned herein above.

120. Upon information and belief, Defendant BO is aware the aforesaid charge was dismissed.

121. Upon information and belief, Defendant BO is aware the aforesaid charge was false.

122. On September 19, 2016 Plaintiff sent a letter to Defendant BO stating "I object to your attempt to kick me out of my home". He also informed Defendant BO Plaintiff intends

to remain and continue to live and reside in his home and is seeking judicial intervention (see copy of 9/19/16 letter attached as Exhibit "G").

123. Plaintiff's other most recent letters informing Defendant WF he continues to live and reside in his home include the following sent on January 21, 2016, June 16, 2016, July 17, 2016 and August 31, 2016 to Defendant WF's Foreclosure Department and on July 18, 2016, September 1, 2016 and September 2, 2016 to Defendant WF's attorneys Phelan et al and on January 21, 2016 to Defendant LPS's Service Link (see these letters and/ their USPS certified mail receipts attached hereto collectively as Exhibit "H").

124.   Defendant BO in his Sept. 7th letter does not mention "No sanitary utilities"

125. Defendant BO's Sept 7th letter informs Plaintiff, Defendants BO and MT are requiring in addition to utilities being restored, repairs for the bathroom, roof, etc. "whatever".

126. Defendant BO's letter of September 7th informs Plaintiff, Defendants BO and MT are requiring Plaintiff to obtain a Certificate of Occupancy.

127. Defendant BO in his Sept 7th letter to Plaintiff does not mentions anything about any opportunity for a hearing. Rather Defendant BO attempts to kick Plaintiff out of his home under the threat of arrest.

128. Defendants BO and MT did not conduct nor provided Plaintiff the opportunity to have a hearing at any time.

129. Plaintiff was never served, received nor is aware of any notice of any hearing from Defendants BO and MT.

130. Defendants BO and MT never provided Plaintiff the opportunity to appear at a place and time fixed in any complaint to give testimony and file an answer to any complaint by Defendants BO and MT.

131. Defendants BO and MT never served nor did Plaintiff receive an order setting forth any reasonable time period for which a specific action is to be taken by Plaintiff.

132. Defendant MT's **Municipal Code, Chapter 86. Buildings, Unfit sec. 86-2. Complaint; investigation; hearing.** , sets forth procedural requirements for charging that any building is unfit for human habitation or occupancy or use by **"serving a complaint stating the charges… and containing a notice that a hearing will be held before the public officer at a place therein fixed…"** (see copy of sec 86-2 attached hereto as Exhibit "I").

133. Defendant MT's **Municipal Code, Chapter 86. Buildings, Unfit sec. 86-3. Orders to repair or remove**. , states; "**If after such notice and hearing**, the public officer determines that the building under consideration is unfit for habitation or occupancy or use… " and then sets forth the procedure for issuance of orders to repair or remove (see copy of sec 86-3 attached hereto as Exhibit "J")

134. After Plaintiff filed for Bankruptcy on 9/1/16 and obtained an automatic stay his water and gas utilities were restored to his home (see Plaintiff's 9/2/16 letter to NJ Natural Gas Co. attached as Exhibit "K").

135. At this time Plaintiff has working water and gas at his home.

136. Plaintiff's electrical power utility has a pending order for restoration placed by Jersey Central Power & Light subject to a meter inspection scheduled with an electrician on 9/21/16 at his home.

137. Plaintiff has an appointment with a plumber on 9/21/16 for replacement of a portion of the stolen pipe to be connected to a bathroom at his home.

138. Plaintiff has a tarp covering a portion of the roof at his home.

139. At this time Plaintiff has weekly garbage removal service at his home.

140. At the present time the approximate amount owed on the mortgage held by Defendant WF is $341,770.78 (see Monmouth county Sherriff Sales listing details attached as Exhibit "L")

141. The present estimated market value of Plaintiff's home is $709, 444.00 (see Zillow estimate attached as Exhibit "M").

## CLAIMS FOR RELIEF

### FIRST COUNT

(42 U.S.C. 1983 claim against Defendants BO and MT for deprivation of Plaintiff's rights to procedural due process under the Fourteenth Amendment of the U.S. Constitution)

142. Plaintiff repeats and re-alleges each and every allegation of this verified complaint as if set forth at length herein.

143. The acts of Defendants BO and MT, and their agents, as alleged herein, were performed under color of law, and. therefore, constitute actions of the State within the meaning of the Fourteenth Amendment to the U.S. Constitution.

144. Defendants BO and MT have deprived the Plaintiff of an individual interest that is encompassed within the U.S. Constitutions Fourteenth Amendment's protection of life, liberty or property.

145. The procedures used by Defendants BO and MT available to Plaintiff did not provide due process of law.

146. The procedures used contain defects which resulted in the aforesaid procedures as being fundamentally unfair.

147. Defendants BO and MT actions deprive Plaintiff of his U.S. Constitutional rights of procedural due process

148. Defendants BO and MT actions deprive Plaintiff of his aforesaid constitutional rights in violation of 42 U.S.C. § 1983.

149. Plaintiff has no plain, adequate or complete remedy to speedily redress the wrongs herein complained of other than this action. Any other remedy to which Plaintiff could be remitted would be attended by such uncertainties and delays as to deny substantial relief, and cause further irreparable injury. The award of damages is not adequate to protect him from the deprivation of his property interests in his residential property.

WHEREFORE, Plaintiff prays that this Court:

Declare that the procedures used by Defendants BO and MT are inadequate, prohibited and contrary to the Fourteenth Amendment to the U.S. Constitution; Temporarily and permanently enjoin Defendants BO and MT from enforcing any orders to vacate against Plaintiff and his residential property or otherwise interfere with his occupation, habitation or residency of his home that were derived from the aforementioned inadequate procedures; and Plaintiff attorney fees, costs and such other relief as may be equitable and just.

SECOND COUNT

(Claims against Defendants WF and LPS for violations of the Fair Debt Collection Practices Act,
"FDCPA")

150. Plaintiff repeats and re-alleges each and every allegation of this verified complaint as if
set forth at length herein.

151. Plaintiff is a person and consumer within the meaning of the FDCPA.

152. Defendant WF is a debt collector within the meaning of the FDCPA.

153. Defendant LPS is a debt collector within the meaning of the FDCPA.

154. The mortgage loan secured by Plaintiff's residential property was in default at the time
Defendant WF obtained the loan.

155. Defendants WF and LPS have taken non-judicial actions to effect dispossession or
disablement of Plaintiff's residential property.

156. Defendants WF and LPS did not have a present right to possession of the aforesaid
property.

157. Defendants WF and LPS have used unfair and unconscionable means to collect or
attempt to collect the mortgage debt from Plaintiff.

158. Defendants WF and LPS's conduct constitutes unfair practices within the meaning of
15 U.S.C.S.A. 1692f.

159. Defendants WF and LPS have engaged in conduct which the natural consequences of
which is to harass, oppress, or abuse Plaintiff in connection with the collection of the
mortgage debt and/or repossession of the security interest-Plaintiff's residential
property.

160. Defendants WF and LPS's conduct constitutes harassment or abuse within the meaning
of 15 U.S.C.A.1692d.

161. Defendants WF and LPS have used false, deceptive, or misleading representation or
means in connection with the collection of the aforesaid debt related to Plaintiff.

162. Defendant WF has engaged in making false representations, including but not limited
to the legal status of Plaintiff's title to his property, and stating Plaintiff was not
allowed in his home.

163. Defendants aforesaid false representations or implications that he was trespassing or
otherwise not allowed to enter, live and reside in his home is in violation of 15 U.S.C.A
1692e(2)(A) and(7).

164. Defendant WF and LPS's aforesaid conduct disgraced plaintiff.

165. Defendant WF and LPS's use of the written postings placed on Plaintiff's door, which
do not identify Defendant WF as a responsible party for the same while attempting to
entice responsive telephone calls by listing their telephone number is a deceptive means
to obtain information regarding a consumer.

166. Defendants WF and LPS have used false representations or deceptive means to collect
or attempt to collect the aforesaid debt or to obtain information concerning Plaintiff.

167. Defendants WF and LPS's conduct constitutes false or misleading representations
within the meaning of 15 U.S.C.A. 1692e.

168. Defendants WF and LPS aforesaid conduct is the proximate cause of damages
sustained by Plaintiff.

WHEREFORE, Plaintiff prays that this court award compensatory damages, statutory
damages, attorney fees, costs and such other relief as may be equitable and just.

## THIRD COUNT

(Property damage claim for negligence against Defendants WF and LPS)

169. Plaintiff repeats and re-alleges each and every allegation of this verified complaint as if
set forth at length herein.

170. Defendant WF is vicariously liable for acts and omissions of Defendant LPS, an agent,
employee and/or servant of Defendant WF.

171. At all times relevant herein Defendants WF and LPS had a duty of reasonable care to
Plaintiff to protect Plaintiff's aforesaid real and personal property from loss, damage or
injury.

172. Defendants WF and LPS breached and otherwise failed in their aforesaid duty to
Plaintiff to protect his aforesaid real and personal property.

173. As a proximate cause of Defendants WF and LPS's failure to perform their aforesaid
duty Plaintiff has suffered loss, damage and injury to his property.

WHEREFORE, Plaintiff prays that this court award compensatory damages and such other relief
as may be equitable and just.

## FOURTH COUNT

### (Defamation Claim against Defendant WF)

174. Plaintiff repeats and re-alleges each and every allegation of this verified complaint as if set forth at length herein.

175. Upon information and belief Defendant WF stated to agents, employees and or servants of Defendant MT and other third parties the following:

   a. The bank owns and has title to the aforesaid residential property, not the Plaintiff.

   b. Plaintiff was not allowed in his home.

176.     The aforesaid statements concerned the Plaintiff.

177. Upon information and belief, these statement imputed criminal behavior, to wit: Plaintiff was trespassing.

178. Upon information and belief, Defendant WF knew these statements not to be true at the time they were made and Defendant WF made them with reckless indifference as to their truth or falsity and Defendant WF acted with malice and with intent to harm Plaintiff.

179. Upon information and belief, Defendant WF acted with negligence in failing to determine the falsity of the statements.

180. The aforesaid statements which Defendant WF made were not true and in fact false.

181. As a direct and proximate result of Defendant WF's foregoing conduct, Plaintiff's reputation has been injured and he has been damaged, including but not limited to being arrested on a false trespassing charge later dismissed and forced from enjoyment and use of his home where he lives and resides.

WHEREFORE, Plaintiff prays that this court award compensatory damages, together with attorney fees and costs of suit and such other relief as may be equitable and just.

## FIFTH COUNT

(Claim for slander of title against Defendant WF)

182. Plaintiff repeats and re-alleges each and every allegation of this verified complaint as if set forth at length herein.

183. At all times relevant herein Plaintiff was the owner in fee of the following residential property: 7 Seneca Drive Middletown, NJ 07748, situated in Monmouth County, New Jersey.

184. Upon information and belief Defendant WF state, maliciously and without cause, to agents, employees and or servants of Defendant MT and other third parties the following:
   a. The bank owns and has title to the aforesaid residential property, not the Plaintiff.
   b. Plaintiff was not allowed in his home

185. The aforesaid statements were not rue and in fact false.

186. Upon information and belief, these statements imputed criminal behavior, to wit: Plaintiff was trespassing.

187. Upon information and belief the aforesaid statements resulted in Plaintiff being charged with trespass, later dismissed, to his own property

188. As a direct and proximate result of Defendant WF's foregoing conduct, Plaintiff's reputation has been injured and he has been damaged, including but not limited to being arrested on a false trespassing charge, which was later dismissed, and forced from enjoyment and use of his home where he lives and resides.

WHEREFORE, Plaintiff prays that this court award compensatory damages, together with attorney fees and costs of suit and such other relief as may be equitable and just.

## SIXTH COUNT

(Claim for malicious prosecution against Defendant WF)

189. Plaintiff repeats and re-alleges each and every allegation of this verified complaint as if
set forth at length herein.

190. At all times relevant herein Plaintiff was the owner in fee of the following residential
property: 7 Seneca Drive Middletown, NJ 07748, situated in Monmouth County, New
Jersey.

191. On or about Plaintiff was charged with trespassing alleged under NJSA 2C:18-3b.

192. Defendant caused and/or was responsible for the Middletown Police instituting the
aforesaid trespass charge and ensuing criminal proceeding against Plaintiff.

193. On July 18, 2016 the aforesaid trespass charge was dismissed favorable to the Plaintiff.

194. Upon information and belief Defendant WF stated, maliciously and without cause, to
agents, employees and or servants of Defendant MT and other third parties the
following statements:

a. The bank owns and has title to the aforesaid residential property, not the Plaintiff.

b. Plaintiff was not allowed in his home

195. Defendant lacked any reasonable belief or probable cause for making the aforesaid
statements to the Middletown Police which caused the trespass charge to be made.

196. As a direct and proximate result of Defendant WF's foregoing conduct, Plaintiff's
reputation has been injured, he was incarcerated, subjected to defend himself in
municipal court and he has been damaged, including but not limited to being forced
from enjoyment and use of his home where he lives and resides.

WHEREFORE, Plaintiff prays that this court award compensatory damages, together with
attorney fees and costs of suit and such other relief as may be equitable and just.

## SEVENTH COUNT

### (Trespass to real property against Defendants WF and LPS)

197. Plaintiff repeats and re-alleges each and every allegation of this verified complaint as if set forth at length herein.

198. At all times mentioned and relevant herein, plaintiff was and still is in possession of certain real property in the Township of Middletown, County of Monmouth, New Jersey, more particularly described as follows: 7 Seneca Drive Middletown. NJ 07748.

199. At all times relevant herein, Defendants WF and LPS, without the consent and against the will of Plaintiff, repeatedly entered and intruded the aforesaid premises of Plaintiff resulting in damage and loss to Plaintiff's real and personal property.

200. In doing the acts alleged in this complaint, Defendants WF and LPS acted maliciously and with a wanton disregard of plaintiff's rights, and plaintiff is therefore entitled to punitive damages.

201. Due to Defendants WF and LPS' conduct Plaintiff as suffered damages to real and personal property.

WHEREFORE, plaintiff requests judgment against defendants for compensatory damages, punitive damages, damages for emotional distress, attorney fees, costs of suit and any other relief the court deems just and proper.