<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

_____
:
WARREN R. KRAFT, :
:
                Plaintiff, :
:   Civ. Action No. 16-5729-BRM-LHG
      v. :
:
WELLS FARGO & COMPANY, WELLS FARGO :
BANK, N.A., SERVICELINK FIELD SERVICES, :
INC., formerly known as FIS Field Services, Inc., :
formerly known as Black Night Field Services, :
BLACK KNIGHT INFOSERVE, INC., formerly :   **OPINION**
Lender Processing Services, Inc., TOWNSHIP OF :
MIDDLETOWN NJ, a body politic, BRIAN :
O'CALLIHAN, in his official capacity and :
individually, and JOHN DOES 1-10, :
:
                Defendants. :
_____:

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is a motion by *pro se* Plaintiff Warren R. Kraft ("Plaintiff") to preliminarily enjoin Defendants Township of Middletown NJ ("Middletown") and Brian O'Callihan ("O'Callihan"), a Middletown Code Enforcement Officer, "from enforcing any order to vacate or otherwise interfering with his occupation, habitation and residency of his home." (Dkt. No. 14 at 9.) The deadline for Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. (together, "Wells Fargo"), Servicelink Field Services, Inc., Black Knight Infoserv, Inc., Black Knight Management Services, Middletown, and O'Callihan (collectively, "Defendants") to oppose Plaintiff's Motion for Preliminary Injunction was November 14, 2016. (Letter Order (Dkt. No. 12) at 7.) Because, to date, Defendants have not opposed the Motion, the Court considers the Motion

unopposed. Therefore, for the reasons set forth herein, Plaintiff's Motion for Preliminary Injunction is **GRANTED**.

I. **BACKGROUND**[1]

This matter involves Middletown's alleged condemnation of Plaintiff's home, located at 7 Seneca Drive, Middletown, NJ 07748, as unsuitable for human habitation.[2] According to Plaintiff, he is the owner of the property at 7 Seneca Drive, Middletown, NJ 07748, which is his sole residence.[3] On July 18, 2016, he returned home, after an absence of 77 days, to find a sticker, dated May 31, 2016, on his front door "stating the structure was unfit for habitation 'no sanitary utilities.'" (Compl. (Dkt. No. 1) at ¶¶ 110-22.) He removed the sticker and took up residence in the property. (*Id.* at ¶¶ 113-14.) Thereafter, on August 8, 2016, Plaintiff again found a sticker on his front door, posted on behalf of Middletown, which stated that the occupants of the building

---

[1] These facts are taken from the Complaint and exhibits to the Complaint, which are the sole evidence Plaintiff submits in support of his Motion.

[2] Plaintiff also asserts additional claims against Wells Fargo, Servicelink Field Services, Inc., Black Knight Infoserve, Inc., and Black Knight Management Services, arising from their alleged illegal foreclosure on Plaintiff's home, and the seizure of his property. However, Plaintiff does not move for a preliminary injunction based on these claims.

[3] Considering the fact that Plaintiff appears to be in foreclosure proceedings with Wells Fargo, there is some question as to whether Plaintiff currently owns the property at 7 Seneca Drive, Middletown, NJ 07748, or owned it at the time that it was declared uninhabitable. However, in the state foreclosure action, the Amended Final Judgment of the Honorable Paul Innes, P.J.Ch., which orders the sale of the property to satisfy certain debts, appears to indicate that Plaintiff may retain ownership until a sheriff's sale of the property is completed. Amended Final Judgment, *Washington Mutual Bank, FA v. Laura Kraft A/K/A Laura Princiotte,* Civ. No. F-17248-06 (N.J. Super. Ct. Ch. Div. February 22, 2016), *available at* (Mot. to Dismiss Pl.'s Compl. With Prejudice (Dkt. No. 15-13) at Ex. K). *B*ecause Defendants have not provided the Court with evidence to contradict Plaintiff's assertions that he owned the property at the time, and that he continues to own the property, for the purposes of this Motion for Preliminary Injunction, Plaintiff has sufficiently demonstrated ownership of the property.

were required to vacate because the structure was unfit for human habitation. (*Id.* at ¶ 114.) Plaintiff continued to occupy the property.

On August 31 and September 2, 2016, Plaintiff sent Middletown two letters informing the township that he did not intend to vacate his home. (*Id.* at ¶ 116.) In response, on September 7, 2016, O'Callihan, acting on behalf of Middletown, sent Plaintiff a letter informing him that the property at 7 Seneca Drive, Middletown, NJ 07748 was not suitable for human habitation. (*Id.* at ¶ 118, Ex. F.) According to O'Callihan, Plaintiff would need to "have the utilities restored, and a working indoor bathroom, and [complete] whatever other repairs that are needed" before he could "request an inspection of the property to have a Certificate of Occupancy issued." (*Id.* at Ex. F.) O'Callihan cautioned that if Plaintiff attempted to reside in the building before it passed the required inspection, he would be "subject to arrest by the Middletown Police Department." (*Id.* at Ex. F.) To date, Plaintiff continues to reside at 7 Seneca Drive, Middletown, NJ 07748. (*Id.* at ¶¶ 122, 135-39.) He asserts that he currently has water and gas utilities at his home, and as of September 21, 2016, he may have had his electricity restored and his bathroom repaired. (*Id.* at ¶¶ 134-37.) The Complaint also states that there is currently a tarp covering the portion of his roof that is leaking, and he has active garbage removal service at his home. (*Id.* at ¶¶ 137-39.)

According to Plaintiff, he never received notice of any hearing at which his residence was declared uninhabitable and was not given an opportunity to object to its condemnation. (*Id.* at ¶¶ 129-130.) Therefore, on September 20, 2016, Plaintiff filed a Complaint, asserting, *inter alia*, claims against Middletown and O'Callihan under 42 U.S.C. § 1983 for seizure of his property without sufficient pre-deprivation due process, in violation of his Fourteenth Amendment due process rights.

The same day, Plaintiff moved for an *ex parte* temporary restraining order enjoining Middletown and O'Callihan from enforcing any order to vacate the property at 7 Seneca Drive, Middletown, NJ 07748. (Dkt. No. 2.) On September 22, 2016, the Court entered an Order denying Plaintiff's Motion for a Temporary Restraining order because (1) Plaintiff had not disclosed what efforts, if any, he had made to give notice to Defendants Middletown or O'Callihan, nor explained why notice and a full briefing should not be required before the Court may issue the requested injunction and (2) Plaintiff failed to meet his burden of demonstrating that he is likely to succeed on the merits of his § 1983 claims against Defendants Middletown and O'Callihan. (Dkt. No. 4.) On October 6, 2016, Plaintiff moved for reconsideration of the Court's September 22, 2016 Order. (Dkt. No. 11.) On October 20, 2016, the Court denied Plaintiff's Motion for Reconsideration, and set a schedule for service of the Summons, Complaint, Order, and a new Motion for Preliminary Injunction on Defendants, as well as a schedule for briefing of the new Motion for Preliminary Injunction. (Dkt. No. 12.)

Plaintiff now moves for an order preliminarily enjoining Middletown and O'Callihan "from enforcing any order to vacate or otherwise interfering with his occupation, habitation and residency of his home." (Dkt. No. 14 at 9.) On October 28, 2016, Plaintiff duly served Defendants with the Summons, Complaint, Order, and Notice of Motion for Preliminary Injunction. (Dkt. No. 18.) Pursuant to the October 20, 2016 Order, Defendants' deadline to oppose the Motion for Preliminary Injunction was November 14, 2016. To date, Defendants have not opposed the Motion or requested an extension to this deadline. Accordingly, the Court considers the Motion unopposed. In light of this lack of opposition, and for the reasons set forth below, Plaintiff's Motion for Preliminary Injunction is granted.

## II.  LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Groupe SEB United States, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "Awarding preliminary relief, therefore, is only appropriate 'upon a clear showing that the plaintiff is entitled to such relief.'" *Groupe*, 774 F.3d at 197 (quoting *Winter*, 555 U.S. at 22). Consequently, a plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Groupe*, 774 F.3d at 197.

## III. DECISION

Because Plaintiff moves for a preliminary injunction solely on the basis of his § 1983 due process claims, this Opinion analyzes only the adequacy of the due process protections previously provided to Plaintiff regarding the condemnation of his home, namely that, according to Plaintiff, no notice or pre-deprivation hearing were provided. The Court takes no position in this Opinion regarding Plaintiff's likelihood to succeed on the merits of his other claims. And, furthermore, this Opinion should in no way be construed as barring Middletown or O'Callihan's pursuit of a future hearing, or other process, to declare 7 Seneca Drive, Middletown, NJ 07748 unfit for human habitation, in conformance with the due process requirements of the Fourteenth Amendment. The Court emphasizes that this is not an adjudication of the merits of Plaintiff's § 1983 due process claims, but rather a determination of whether Plaintiff is entitled to a preliminary injunction, based on the evidence currently before the Court and in light of the fact that the pending Motion is unopposed.

### A. Likelihood of Success on the Merits

Plaintiff brings claims against Middletown and O'Callihan, pursuant to 42 U.S.C. § 1983, for violating his Fourteenth Amendment due process rights by declaring his residence uninhabitable, and threatening to remove him from his home by force, without first providing him with a pre-deprivation process to oppose the condemnation of his residence. "The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property, without due process of law" and a "fundamental requirement of due process is the opportunity to be heard," which "must be granted at a meaningful time and in a meaningful manner." *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (marks and citations omitted). Typically, "the hearing should come before the Government deprives a person of his property," because "when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented." *Id.* (quoting *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972)). Nonetheless, in certain circumstances, "a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *Elsmere*, 542 F.3d at 417 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). The state is only relieved of its obligation to provide a pre-deprivation process "[w]here there is the necessity of quick action by the State, or where providing any meaningful pre-deprivation process would be impractical." *Elsmere*, 542 F.3d at 417 (marks and citations omitted).

Applying this standard to the case at hand, Plaintiff has shown that he is likely to succeed on the merits of his § 1983 claims against Middletown and O'Callihan, in his official capacity, for failing to provide Plaintiff with any pre-deprivation due process before declaring his property unfit for human habitation. According to Plaintiff, he never received notice of any hearing at which his

6

residence was declared uninhabitable, and thus was not given an opportunity to object to its condemnation. (Dkt. No. 1 at ¶¶ 129-30.) Despite this lack of due process, O'Callihan, on behalf of Middletown, has threatened Plaintiff with arrest if he continues to reside in the building before it has passed a habitability inspection. (*Id.* at Ex. F.) Such actions on the part of Middletown and O'Callihan, if true, are a violation of Plaintiff's Fourteenth Amendment rights, barring some emergency which rendered providing a pre-deprivation hearing process impractical.

Previously, when deciding Plaintiff's Motion for a Temporary Restraining Order, the Court found that Plaintiff had "failed to meet his burden of demonstrating that he is likely to succeed on the merits of his § 1983 claims against Defendants Middletown and O'Callihan," because his moving papers were silent as to (1) "whether the condemnation of Plaintiff's home necessitated quick action by the State," (2) "whether providing any meaningful pre-deprivation process would have been impractical, such that due process would not require Middletown to provide a pre-deprivation hearing process," and (3) "whether Middletown has provided Plaintiff with a post-deprivation process by which to appeal the condemnation determination." (Dkt. No. 4 at 3.) However, Plaintiff now asserts in his moving papers that there was no emergency which justified denying Plaintiff his pre-deprivation due process, and furthermore, that Middletown and O'Callihan have failed to provide him with any post-deprivation hearing to contest the status of his house. In the absence of any evidence to the contrary, and in light of the fact that Middletown and O'Callihan have not raised such defenses in opposition to this Motion, the Court sees no reason to presume extenuating circumstances justified denying Plaintiff a pre-deprivation hearing or other process. Therefore, the Court finds that Plaintiff is likely to succeed on the merits of his § 1983 claims against Middletown and O'Callihan, in his official capacity.

### B. Irreparable Harm

7

"[W]here interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011) (quotations omitted). Plaintiff asserts that he will be irreparably harmed if he is forced to vacate his home, because his enjoyment of the property is unique to the property itself. Additionally, according to the Complaint, Plaintiff is currently in the process of filing for Chapter 7 Bankruptcy. (Dkt. No. 1 at ¶ 134.) Based on the Voluntary Petition for Individuals Filing for Bankruptcy attached to the Complaint, Plaintiff estimates that his assets are approximately equal to his liabilities. (*Id.* at Ex. E, 6.) Therefore, Plaintiff does not appear to have the means to avail himself of alternative housing if forced to vacate from his current residence. Accordingly, the Court finds that Plaintiff has demonstrated irreparable injury.

### C. Balance of Hardships

The balance of hardships favors an injunction. Plaintiff will be irreparably harmed if he is forced to vacate his home and the Court sees no reason why Middletown or O'Callihan would be harmed by Plaintiff's continued occupation of his home.

### D. Public Interest

The Court recognizes that there is a public interest in preventing the occupation of properties unfit for human habitation. *See Mt Holly Citizens in Action, Inc. v. Twp. of Mount Holly*, Civ. No. 08-2584 (NLH), 2009 U.S. Dist. LEXIS 11061, at *11-16 (D.N.J. Feb. 13, 2009) (finding eviction of tenants from condemned housing development in the public interests because nearby vacant homes "created fire hazards, crime, squatters, graffiti, roaches and mold" and "posed a hazard--to the people still living there, to the workers, and to the community at large"). However it is also in the public interest to require the Government to provide due process, whenever

practicable, before depriving an individual of his property. *Cf. Elsmere*, 542 F.3d at 417. Balancing these public interests, and taking into account all other factors, the Court finds that Plaintiff is entitled to preliminary injunctive relief.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction is **GRANTED** to the extent he seeks to enjoin Middletown or O'Callihan from requiring him to vacate his home on the basis of its fitness for human habitability, without first providing adequate due process protections.

Date: November 21, 2016            /s/ Brian R. Martinotti
                                                                 **HON. BRIAN R. MARTINOTTI**
                                                                 **United States District Judge**