NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
WARREN R. KRAFT,                                    :
                                                    :
                        Plaintiff,                  :
                                                    :          Civ. Action No. 16-5729-BRM-LHG
            v.                                      :
                                                    :
WELLS FARGO & COMPANY, WELLS FARGO                  :
BANK, N.A.,  SERVICELINK FIELD SERVICES,            :
INC., formerly known as FIS Field Services, Inc.,   :
formerly known as Black Night Field Services,       :
BLACK KNIGHT INFOSERVE, INC., formerly              :
Lender Processing Services, Inc., TOWNSHIP OF       :          **OPINION**
MIDDLETOWN NJ, a body politic, BRIAN                :
O'CALLIHAN, in his official capacity and            :
individually, and JOHN DOES 1-10,                   :
                                                    :
                        Defendants.                 :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendants Wells Fargo & Company and Wells Fargo Bank,

N.A.'s (collectively "Wells Fargo") Motion to Dismiss Plaintiff Warren Kraft's ("Plaintiff")

claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 8(a) (ECF

No. 15); (2) Defendant ServiceLink Field Services, LLC's ("ServiceLink")[1] Motion to Dismiss

Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 33);

and (3) Defendants Township of Middletown ("Middletown") and Brian O'Callahan's

_____

[1] ServiceLink is improperly pled as "Servicelink Field Services, Inc., Black Knight Infoserv, Inc.,
and Black Knight Management Services."

(individually, "O'Callahan"; collectively with Middletown, "Middletown Defendants")[2] Motion to Dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 36). Plaintiff opposes all three Motions. (ECF Nos. 28, 44, and 46.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth herein, Wells Fargo's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. ServiceLink's Motion to Dismiss is **GRANTED in part** and **DENIED AS MOOT in part**. Middletown Defendants' Motion to Dismiss is **GRANTED**. As all claims over which this Court has original jurisdiction are dismissed, pursuant to 28 U.S.C. § 1367(c), this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Wells Fargo and ServiceLink. Therefore, Plaintiff's state law claims against the Wells Fargo and ServiceLink are **DISMISSED**, and Wells Fargo's and ServiceLink's Motions to Dismiss the state claims are **DENIED AS MOOT**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true, considers any document "*integral to or explicitly relied upon* in the complaint," and draws all inferences in the light most favorable to Plaintiff. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In instances where the Complaint does not include all pertinent facts, the Court gleans additional information regarding Plaintiff's ownership of the Property and the foreclosure proceedings from documents Wells Fargo included with its motion. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426. Courts may also consider publicly recorded

---

[2] O'Callahan is improperly pled as "Brian O'Callihan."

documents, including a Mortgage and Assignment of Mortgage, and prior Court records, such as a Final Judgment and Writ of Execution, which are self-authenticating. F.R.E. 803(14).

This matter arises from a series of disputes related to Plaintiff's residence at 7 Seneca Drive in Middletown, New Jersey 07749 (the "Property"), and follows foreclosure proceedings (the "Foreclosure Action") filed on September 29, 2006, in the Superior Court of New Jersey, Monmouth County ("State Court"). (ECF No. 1 ¶ 13; ECF No. 15-7.) On or about June 3, 1996, Plaintiff inherited the Property from his father, Raymond Kraft. (ECF. No. 1-1 at 1-7.) Raymond Kraft had owned the property jointly with Plaintiff's ex-wife, Laura Kraft,[3] with whom Raymond Kraft executed a Note in the amount of $184,000.00 on February 22, 1994, in favor of PNC Mortgage Corporation of America. (ECF No. 1 ¶ 27; ECF No. 15-3.) The Note was secured by a Mortgage in favor of PNC Mortgage Corporation of America, which was recorded on March 7, 1994, by the Clerk of Monmouth County. (ECF No. 15-4.) On March 3, 1994, the Mortgage was assigned to Federal National Mortgage Association, which assigned the Mortgage to Washington Mutual Bank, FA ("Washington Mutual") on November 10, 2006. (ECF Nos. 15-5 and 15-6.) On March 9, 2009, the Mortgage was assigned to Wells Fargo Bank, N.A. (ECF No. 15-7.)

Washington Mutual, Wells Fargo's immediate predecessor as mortgagee, filed the Foreclosure Action in which it alleged the mortgagors were in default. On July 24, 2007, the State Court issued a Final Judgment and Writ of Execution in favor of Washington Mutual. (ECF No. 15-10.) On October 9, 2014, the State Court issued an Assignment of Judgment and Writ of Execution in favor of Wells Fargo Bank, N.A. (ECF No. 15-12.) On February 22, 2016, the State

---

[3] The Complaint is silent as to Laura Kraft's interest in the Property, but it appears from Plaintiff's motion papers that he obtained sole ownership pursuant to the divorce agreement.

Court then entered an Amended Final Judgment and Amended Writ of Execution in favor of Wells Fargo Bank, N.A. (ECF No. 15-13.)

Wells Fargo retained ServiceLink[4] to "conduct inspections and provide property field services related to" the Property. (*Id.* ¶ 29.) Plaintiff alleges Wells Fargo and/or ServiceLink damaged the Property when they, *inter alia*, mowed Plaintiff's lawn without authorization, broke into the Property more than fifteen times; removed and changed the locks; "trashed" the Property by "strewing personal papers, hundreds of books and clothing on the floor"; moved mattresses from the bedrooms to the garage; removed all of the food from the kitchen on several occasions; removed the copper piping from the basement; and removed a painting and clothing from the Property. (*Id.* ¶¶ 34, 37, 42, 44, 47, 51-52.) Plaintiff contends Wells Fargo and/or ServiceLink left more than a dozen postings on the door of the Property that were "contacts with Plaintiff . . . and [were] attempts to facilitate communication with" Wells Fargo. (*Id.* ¶ 65.) Plaintiff called the contact number on the postings more than twenty times to inform Wells Fargo and ServiceLink he still lived in the Property, but he was never able to end their entrances onto the Property. (*Id.* ¶¶ 67-72.)

Plaintiff alleges he was arrested for trespassing by Middletown police officers in his home on May 2, 2016, after the officers forced entry into the Property. (*Id.* ¶¶ 87-88, 93.) Plaintiff claims an officer told him, "The bank says you are not allowed to be here." (*Id.* ¶ 89.) As a condition of his bail, Plaintiff was prohibited from returning to the Property. (*Id.* ¶ 94.) On May 23, 2016, Plaintiff met with Middletown Municipal Prosecutor Gerald J. Massell ("Massell"), who told

---

[4] ServiceLink is the successor in interest to LPS Field Services, Inc., the entity involved in the events in the Complaint. (ECF No. 33-4 at 2 n.1.) Black Knight Infoserv., Inc. and Black Knight Management Services, which Plaintiff also names as defendants, were affiliates of LPS Field Services, Inc. (*Id.*) For convenience, the Court uses "ServiceLink" to refer to each of the related entities.

Plaintiff, "The bank says they own the property." (*Id.* ¶ 96.) Plaintiff offered to show Massell a copy of the Deed, which listed Plaintiff as the owner, but Massell told him, "I don't need that." (*Id.* ¶ 97.) On July 18, 2016, the trespassing charge was dismissed, and Plaintiff returned to the Property for the first time in seventy-seven days. (*Id.* ¶¶ 108, 110.)

Plaintiff alleges Middletown posted a sticker on the Property on August 8, 2016, ordering the occupants to vacate because the structure was unfit for habitation. (*Id.* ¶ 114.) He further alleges the order to vacate did not specify a condition that rendered the Property unfit for habitation. (*Id.*) Plaintiff remarks however, the Property's "gas, electric, and water utilities have been shut off for several years for non-payment." (*Id.* ¶ 28.) On August 31 and September 2, 2016, Plaintiff sent two letters to Middletown informing them he would not vacate. (*Id.* ¶ 116.) Plaintiff informed Middletown he had filed a Chapter 7 Bankruptcy petition and was in the process of restoring utilities to the Property. (*Id.* ¶ 117.) O'Callahan, a code enforcement officer for Middletown, wrote an undated letter in reply in which he informed Plaintiff, regardless of the bankruptcy petition, no one could reside at the Property until the utilities were restored and all other "required" repairs were made. (*Id.* ¶ 118; ECF No. 1-1 at 24.) O'Callahan informed Plaintiff he could be arrested if he resided at the Property before the Middletown Building Department issued a certificate of occupancy. (ECF No. 1-1 at 24.) Plaintiff notes O'Callahan's letter did not mention Plaintiff would have an opportunity to for a hearing, nor did it provide a place and time to give testimony in response to any complaint by Middletown Defendants. (ECF No. 1 ¶¶ 128, 130.) Plaintiff contends Middletown's Municipal Code sets forth procedural requirements for charging a building is unfit for human habitation, including "serving a complaint stating the charges . . . and containing a notice that a hearing will be held before the public officer." (*Id.* ¶ 132; ECF No. 1-1 at 34.)

After Plaintiff filed for Bankruptcy on September 1, 2016, his water and gas utilities were restored and he obtained a pending order to restore electricity to his home. (ECF No. 1 ¶ 134; ECF No. 1-1 at 36.) On September 19, 2016, Plaintiff sent O'Callahan a letter stating he intended to remain at the Property and planned to "seek[] judicial intervention." (ECF No. 1 ¶ 122; ECF No. 1-1 at 26-27.)

On September 20, 2016, Plaintiff filed the Complaint. (ECF No. 1.) Plaintiff asserts seven claims: (1) a claim against Middletown Defendants pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment right to procedural due process (Count One); (2) claims against Wells Fargo and ServiceLink for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") (Count Two); (3) claims against Wells Fargo and ServiceLink for property damage (Count Three); (4) a claim against Wells Fargo for defamation (Count Four); (5) a claim against Wells Fargo for slander of title (Count Five); a claim against Wells Fargo for malicious prosecution (Count Six); and (7) claims against Wells Fargo and ServiceLink for trespass to real property (Count Seven).

On September 20, 2016, Plaintiff filed a motion for a temporary restraining order seeking to enjoin Middletown Defendants from taking any action to interfere with Plaintiff's occupancy of the Property. (ECF No. 2.) On September 22, 2016, the Court denied Plaintiff's motion. (ECF No. 4.) Plaintiff sought reconsideration of that motion on October 6, 2016, which the Court denied. (ECF Nos. 11 and 12.) On October 31, 2016, Plaintiff filed a motion for a preliminary injunction seeking to enjoin Middletown Defendants "from enforcing any order to vacate or otherwise interfering with his occupation, habitation and residency of his home." (ECF No. 14 at 9.) On November 21, 2016, the Court granted Plaintiff's motion and ordered Middletown Defendants, "as well as their agents, representatives, and anyone acting on their behalf, are preliminarily enjoined,

until further order of the Court, from enforcement of any order to vacate [the Property] or otherwise interfering with Plaintiff's occupation, habitation, and residency at his home, on the basis of its fitness for human habitation, occupancy, or use." (ECF No. 25.)

Wells Fargo then moved to dismiss the claims against it, pursuant to Rules 12(b)(1), 12(b)(6), and 8(a). (ECF No. 15.) ServiceLink and Middletown Defendants later filed motions to dismiss pursuant to Rule 12(b)(6). (ECF Nos. 33 and 36.) Plaintiff opposes all three motions. (ECF Nos. 28, 44, and 45.)

## II. Legal Standards

### A. Motion to Dismiss

Defendants move to dismiss the Complaint for failure to state a claim, pursuant to Rule 12(b)(6), and Wells Fargo also moves on the grounds the Court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1). (ECF Nos. 15, 33, and 36.) "Caution is necessary because the standards governing the two rules differ markedly, as Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than does Rule 12(b)(1)." *Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016).

### 1. Fed. R. Civ. P. 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis*, 824 F.3d at 346. A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (citing *Petruska v. Gannon Univ*., 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id*. (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside

the pleadings." *Id.* (citation omitted). Thus, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

Here, Wells Fargo is asserting a facial 12(b)(1) challenge. *See Frame v. Lowe*, Civ. No. 09-2673, 2010 WL 503024, at *5-6 (D.N.J. Feb. 8, 2010) (analyzing a *Rooker-Feldman* challenge as a facial attack on subject matter jurisdiction). Therefore, the Court considers the allegations in the light most favorable to Plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen*, 549 F.2d at 891.

## 2. Federal Rules of Civil Procedure 8 and 12(b)(6)

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Philips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability

requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

#### A. Wells Fargo's Argument Regarding Subject Matter Jurisdiction

Wells Fargo moves to dismiss pursuant to Rule 12(b)(1) on the grounds this Court lacks subject matter jurisdiction over Plaintiff's claims. (ECF No. 15 at 11-12.) Wells Fargo argues the *Rooker–Feldman* doctrine bars Plaintiff's claims, because those claims essentially attack the underlying state court order of foreclosure. (*Id.* (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).) Pursuant to *Rooker-Feldman*, federal district courts lack subject matter jurisdiction to review and reverse state court judgments. *In re Knapper*, 407 F.3d 573, 580 (3rd Cir. 2005). "[A] claim is barred by *Rooker–Feldman* under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* "[A] federal claim is 'inextricably intertwined' with an issue adjudicated by a state court when (1) the federal court must determine that the state court

10

judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004)). Where, on the other hand, the federal plaintiff presents "some independent claim, albeit one that denies a legal conclusion that a state court has reached," the doctrine does not apply. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005) quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006)). In such an instance, jurisdiction is confirmed and the court should then consider "whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 292.

Wells Fargo argues Plaintiff's claims are an effort to challenge the State Court's decision in the Foreclosure Action. (ECF No. 15 at 13-14.) Plaintiff contends *Rooker-Feldman* does not bar his claims, "because none of the present causes of action seek to review and revise the state court decision or void the foreclosure judgment." (ECF No. 28 at 3.) Plaintiff argues the events that gave rise to his claims against Wells Fargo in this action—whether Wells Fargo (Count Two) violated the FDCPA and whether it is liable for property damage, defamation, slander of title, malicious prosecution, and trespass to real property (Counts Three to Seven)—arose after the Foreclosure Action and, therefore, he does not complain of injuries caused by the State Court's judgment. (*Id.*)

This Court finds the *Rooker-Feldman* doctrine does not bar Plaintiff's claims. "Four requirements must be met for the doctrine to apply: (1) the plaintiff lost in state court; (2) the plaintiff complains of injury caused by the state court judgment; (3) the state court judgment was rendered before the federal suit was filed; and (4) the plaintiff invites the district court to review and reject the state court judgment. *Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 50–51 (3d Cir. 2013) (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159,

166 (3d Cir. 2010)). Here, the second factor is not satisfied. Plaintiff complains of injuries that arose from Wells Fargo's actions after Final Judgment and Writ of Execution were entered in the Foreclosure Action on July 24, 2007, not from injuries caused by the State Court's judgment. Plaintiff does not contest the facts of the foreclosure, nor does he seek to overturn the State Court's findings. Plaintiff does not argue Wells Fargo has no right to foreclose on the property. *Contra Gage v. Wells Fargo Bank, N.A. AS*, No. Civ. A. 11-862 FLW, 2011 WL 4073877, at *5 (D.N.J. Sept. 9, 2011), *aff'd sub nom.*, *Gage v. Wells Fargo Bank, NA*, 450 F. App'x 121 (3d Cir. 2011), and *aff'd sub nom.*, *Gage*, 521 F. App'x at 49 (finding *Rooker-Feldman* barred claims that followed a foreclosure where "the Complaint claim[ed] that Wells Fargo is an 'imposter' and that it does not have any 'rights' to foreclose on [p]laintiff's property.") Rather, Plaintiff seeks damages stemming from Wells Fargo's alleged actions taken after September 20, 2015—more than eight years after Final Judgment in the Foreclosure Action was entered.

The Court finds *Rooker-Feldman* does not bar Plaintiff's claims, and the Court has subject matter jurisdiction over Plaintiff's claims. Wells Fargo's Motion to Dismiss pursuant to Rule 12(b)(1) is **DENIED**.

### B.  Wells Fargo's Motion to Dismiss Pursuant to Rule 12(b)(6)

Wells Fargo also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground Plaintiff has failed to state a claim upon which relief can be granted.

### 1. New Jersey's Entire Controversy Doctrine

Wells Fargo argues Plaintiff's claims relate to the origination and default of the Note and Mortgage and are therefore barred by New Jersey's Entire Controversy Doctrine, New Jersey Court Rule 4:40(a). (ECF No. 15 at 14.) The Entire Controversy Doctrine requires a party to assert

in one action all claims related to a single transaction. *See Manhattan Woods Golf Club, Inc. v. Arai*, 312 N.J. Super. 573, 577 (App. Div. 1998) (citations omitted).

As discussed above, Plaintiff's claims against Wells Fargo arise from events that transpired several years after the State Court entered Final Judgment in the Foreclosure Action. Plaintiff could not have asserted those claims in the Foreclosure Action, because the events that gave rise to the claims had not taken place.

The Court finds, therefore, the Entire Controversy Doctrine does not bar Plaintiff's claims against Wells Fargo.

### 2. The *Colorado River* Abstention Doctrine

Wells Fargo contends this Court should "abstain and defer to state court proceedings for reasons of '[w]ise judicial administration,' giving regard to conservation of judicial resources and comprehensive disposition of litigation." (ECF No. 15 at 16-17 (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976).) This doctrine applies when there are parallel state and federal proceedings, meaning the state and federal cases involve the same parties and "substantially identical claims [raising] nearly identical allegations and issues." *Nationwide Mut. Fire Ins Co. v. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009).

The Court finds the doctrine does not apply, as Plaintiff's claims against Wells Fargo arise from events that transpired several years after the State Court entered Final Judgment in the Foreclosure Action. The claims are not "substantially identical" as those in the Foreclosure Action, because Plaintiff's claims in this matter did not accrue until years after Final Judgment in the Foreclosure Action.

The Court finds, therefore, the *Colorado River* Abstention Doctrine does not bar Plaintiff's claims against Wells Fargo.

### 3. *Res Judicata* and Collateral Estoppel

Wells Fargo argues the Complaint is barred by *res judicata* and collateral estoppel. The Court finds, for the same reasons detailed above, Plaintiff's claims are not barred by *res judicata* and collateral estoppel. *Res judicata* bars plaintiffs from bringing causes of action that were already determined in an earlier action between two parties or that could have been determined in an earlier action. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 409 (1991). As the events giving rise to Plaintiff's claims against Wells Fargo did not take place until years after the Foreclosure Action concluded, Plaintiff could not have asserted those claims at that time. Therefore, *res judicata* does not bar Plaintiff's claims.

Collateral estoppel precludes a party from re-litigating an issue when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Twp. Of Middletown v. Simon*, 193 N.J. 228, 236 (2008). Here, the issues underlying Plaintiff's claims against Wells Fargo were not litigated in the Foreclosure Action, because these claims did not accrue until years later.

The Court finds, therefore, collateral estoppel does not bar Plaintiff's claims.

### 4. FDCPA Claims Against Wells Fargo

Congress enacted the FDCPA as a result of the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(a). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors" and to promote further action "to

protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First Nat'l Collection Bureau*, Civ. No. 16-cv-2791, 2016 U.S. Dist. LEXIS 157575, at *23 (D.N.J. Nov. 10, 2016).

Typically,

> [t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).

In its Motion to Dismiss, Wells Fargo does not dispute that Plaintiff is a "consumer" under the meaning of the FDCPA. Instead, Defendant asserts Plaintiff fails to state a FDCPA claim because Wells Fargo is not a "debt collector" pursuant to the FDCPA. (ECF No. 15 at 21-22 (citing 15 U.S.C. § 1692a(6).) Wells Fargo argues "the FDCPA applies to entities engaged in collecting debts on the behalf of others, and does not apply to creditors who may be attempting to collect their <u>own</u> is well settled that a creditor collecting its own debt is not a debt collector for purposes of the FDCPA." (*Id*. at 22 (citing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000); *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980)).) In opposition, Plaintiff maintains Wells Fargo qualifies as a debt collector, because it was assigned the mortgage after the debtor was in default. (ECF No. 28 at 4. (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985).)

The FDCPA defines a "debt collector" as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).

"Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Id.* A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed," but "does not include any person . . . that . . . receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Accordingly, the definition "excludes creditors who attempt to collect their own debts, but does not exclude an entity . . . who has acquired a debt that was already in default." *Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 118 (3rd Cir. 2007); *see Staub*, 626 F.2d 275, 277 (3rd Cir. 1980) (citations omitted) (noting the FDCPA "does not apply to persons or businesses collecting debts on their own behalf. It is directed to those person who are engaged in business for the principal purpose of collecting debts").

On the facts alleged in the Complaint, Wells Fargo is a debt collector. Here, the Foreclosure Action was filed on September 29, 2006. (ECF No. 1 ¶ 13; ECF No. 15-7.) The Mortgage was assigned to Wells Fargo Bank, N.A. on March 9, 2009. (ECF No. 15-7.) The Court finds Wells Fargo is a debt collector under the FDCPA, as it "acquired a debt that was already in default." *Oppong*, 215 F. App'x at 118.

Wells Fargo also argues, even if it were a debt collector under the statute, Plaintiff fails to allege conduct of the sort the FDCPA was intended to prevent. (ECF No. 31 at 2-3 (citing *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007).) The Court agrees and finds Plaintiff has not sufficiently alleged Wells Fargo's "challenged practice involves an attempt to collect a 'debt.'" *See Douglass*, 765 F.3d at 303. Plaintiff alleges ServiceLink and/or Wells Fargo left more than twelve postings on the Property, none of which identified Wells Fargo as the entity responsible for the notices. (ECF No. 1 ¶¶ 57-58.) Plaintiff also alleges the postings represented "contacts" with him "and [were] attempts to facilitate communication with [Wells Fargo]." (*Id.* ¶ 65.) Plaintiff contends "[n]one of the postings mention it pertains to the collection of a debt," but the postings included a phone number that belonged to Wells Fargo's "Asset Management & Preservation Department." (*Id.* ¶¶ 58-59.) The Complaint lacks any allegation, however, about how, if at all, the postings or the phone calls represented an attempt to collect a debt. While Plaintiff alleges he made more than fifteen calls to Wells Fargo and ServiceLink in response to the postings, he does not allege anyone with whom he spoke attempted to collect a debt from him or even mentioned his debt. To the contrary, he alleges the parties with whom he spoke discussed only Wells Fargo and ServiceLink's right to enter the Property, other than one party from Wells Fargo who "made disparaging remarks to Plaintiff about living and residing in his home without utilities." (ECF No. 1 ¶¶ 65-70.) Plaintiff's argument that the postings violated the FDCPA because they were an "attempt . . . to obtain information concerning Plaintiff" is unavailing. (ECF No. 44 at 6 (citing 15 U.S.C. § 1692e).) While a communication can constitute an attempt to collect a debt even when there is no demand for payment, the communication must at least "convey 'information regarding a debt.'" *Simon v. FIA Card Svcs., N.A.*, 732 F.3d 259, 265-66 (3d Cir. 2013).

Here, there is no allegation that the postings or the phone calls that followed conveyed any information regarding a debt. Rather, the Complaint and underlying documents suggest the postings were part of Wells Fargo's rights under the Mortgage and its obligation under Middletown's municipal code to secure the property. The Mortgage provides:

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender *may do and pay for whatever is necessary to protect the value of the Property* and Lender's rights in the Property. Lender's actions may include . . . *entering on the Property to make repairs*.

(ECF No. 15-4 at 5 ¶ 7 (emphasis added).) As the borrowers were in default and the Property had been foreclosed upon, the mortgagee's right to take such action was triggered. Further, the sample posting submitted by Plaintiff supports the premise Wells Fargo was merely acting within its rights to secure the Property. (*See* ECF No. 44-2 at 49.) The posting states a "property inspector has temporarily secured and maintained this property to protect against future deterioration" and lists possible effects, including the locks having been changed and the plumbing system being winterized. (*Id.*) Plaintiff himself alleges the phone number on the postings belonged to Wells Fargo's "Asset Management & Preservation Department," not to any department concerned with debt collection, nor does he allege anyone reached at the number referred to his debt in any way. (ECF No. 1 ¶ 58.)

The Court finds, therefore, Wells Fargo's actions did not constitute an attempt to collect a debt from Plaintiff. As Plaintiff has not satisfied the third prong of a FDCPA claim, Wells Fargo's Motion to Dismiss Plaintiff's FDCPA claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** and the claim is hereby **DISMISSED**. *See Douglass*, 765 F.3d at 303.

### C. FDCPA Claims Against ServiceLink

Plaintiff's FDCPA claim against ServiceLink is based upon a theory of agency liability, as ServiceLink worked at Wells Fargo's direction. (ECF No. 1 ¶¶ 29-32, 69; ECF No. 44 at 1-2.) Because the Court finds Plaintiff has not adequately pled a FDCPA claim against Wells Fargo, it follows Plaintiff cannot maintain a related claim against ServiceLink.

Therefore, ServiceLink's Motion to Dismiss Plaintiff's FDCPA claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** and the claim is hereby **DISMISSED**.

### D. State Law Claims Against Wells Fargo and ServiceLink

As to Plaintiff's claims against Wells Fargo and ServiceLink for property damage (Count Three) and trespass to real property (Count Seven), and against Wells Fargo for defamation (Count Four), slander of title (Count Five), and malicious prosecution (Count Six), this Court declines to exercise supplemental jurisdiction over these state law claims. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Del. Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. Here, because Plaintiff's claims for property damage, defamation, slander of title, malicious prosecution, and trespass to real property are based purely

on state law, they are not claims over which the Court has original jurisdiction. Therefore, at this early stage in the litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the Wells Fargo and ServiceLink.

### E.     Claims Against Middletown Defendants

#### 1. Claim Against Middletown

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges Middletown and O'Callahan deprived him of his Fourteenth Amendment right to procedural due process by ordering him to vacate the Property without providing an opportunity for a hearing. (ECF No. 1 ¶¶ 114-18, 125-31.) A plaintiff asserting a claim pursuant to 42 U.S.C. § 1983 must establish (1) the violation of a right under the Constitution and (2) that the violation was caused by a person acting under color of state law. *Am. Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-51 (1999). Plaintiff's claim against Middletown fails, because a municipality is not a "person" subject to suit under 42 U.S.C. § 1983. *U.S. ex rel. Gittlemacker v. Cty. of Phila.*, 413 F.2d 84, 86 (3d Cir. 1969). In his opposition to Middletown Defendants' motion, Plaintiff does not dispute Middletown is not a "person" subject to a § 1983 claim. (*See* ECF No. 46.) The Court finds, therefore, Middletown Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** and Plaintiff's claim against the municipality is **DISMISSED**.

#### 2. Claim Against O'Callahan

Middletown Defendants argue—and Plaintiff does not dispute in his opposition to this motion—O'Callahan is entitled to qualified immunity from Plaintiff's claim. (ECF No. 36-2 at 15; *see* ECF No. 46.) "The qualified immunity doctrine 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharp v. Johnson*, 669

F.3d 144, 159 (3d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To overcome a defendant official's qualified immunity, a plaintiff must demonstrate: (1) the official violated plaintiff's constitutional rights and (2) the right was clearly established such that any reasonable official would have known his or her actions were unconstitutional. *Id.* "The Supreme Court has repeatedly 'stressed the importance of resolving [qualified] immunity questions at the earliest possible stage of the litigation.'" *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "Thus, district courts should move 'expeditiously to weed out suits . . . without requiring a defendant who rightly claims qualified immunity to engage in expensive and time-consuming preparation to defend the suit on the merits.'" *George*, 738 F.3d at 571 (citing *Siegert v. Gilley,* 500 U.S. 226, 232 (1991).

The Court finds Plaintiff has failed to state a claim against O'Callahan, because he has not adequately alleged O'Callahan violated his Constitutional rights or that such rights were clearly established at the time. A plaintiff asserting a Fourteenth Amendment claim must allege (1) he had a property interest protected under the Fourteenth Amendment, and (2) the procedures provide to him were constitutionally inadequate. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Plaintiff has failed to allege a violation of his property interest. First, Plaintiff admits he refused O'Callahan's order to vacate. (ECF No. ¶¶ 113, 115.) Plaintiff admits he informed Middletown by letter he "is not vacating his home and would remain living and residing in his home." (*Id.* ¶ 116.) Even if Plaintiff's assertion that he was denied a hearing in violation of the Fourteenth Amendment were true, Plaintiff cannot allege he suffered any injury as a result of that violation nor does he refute Middletown Defendants' argument he has not suffered any injury. (*See* ECF No. 45.)

Even if Plaintiff could establish a violation of his rights and a related injury, he has not alleged such rights were clearly established at the time. Further, Plaintiff does not refute

Middletown Defendants' argument that O'Callahan is entitled to qualified immunity. (*See* ECF No 45.) Plaintiff admits his "gas, electric and water utilities have been shut off for several years for non-payment." (ECF No. 1 ¶ 28.) In the undated letter Plaintiff attached to his Complaint, O'Callahan cites the lack of utilities as the basis for Middletown's order to vacate the Property. (ECF No. 1-1 at 24.) Plaintiff has not alleged no reasonable official in O'Callahan's position would have ordered him to vacate the property without a hearing in such circumstances. The Court finds Plaintiff's own allegations and the documents upon which he relies in his Complaint suggest O'Callahan is entitled to qualified immunity.

In light of these facts, the Court finds Plaintiff cannot assert a § 1983 claim against O'Callahan. Therefore, Middletown Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** and Plaintiff's claim against O'Callahan is **DISMISSED**.

## IV. CONCLUSION

For the reasons set forth above, Wells Fargo's Motion to Dismiss Pursuant to Rule 12(b)(1) is **DENIED**.

Wells Fargo and ServiceLink's Motions to Dismiss Pursuant to Rule 12(b)(6) (ECF Nos. 15 and 33) are **GRANTED in part** and Plaintiff's FDCPA claims against Wells Fargo and ServiceLink are **DISMISSED**. Pursuant to 28 U.S.C. § 1367(c), this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Wells Fargo and ServiceLink. Therefore, Plaintiff's state law claims against the Wells Fargo and ServiceLink are **DISMISSED** for lack of jurisdiction, and Wells Fargo's and ServiceLink's Motions to Dismiss is **DENIED AS MOOT in part** as to the state claims. Middletown Defendants' Motion to Dismiss (ECF No. 36)

is **GRANTED** and the claims against them are **DISMISSED**. An appropriate Order will follow.


**Date: July 31st, 2017**                    _/s/ Brian R. Martinotti_____
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**