# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

———————————————————— :
                              :
WARREN R. KRAFT             :
                              :
          Plaintiff,       :
                              :
     v.                    :     Civil Action No. 3:16-cv-05729-BRM-LHG
                              :
                              :
WELLS FARGO & COMPANY; WELLS :
FARGO BANK, N.A.; and SERVICELINK :
FIELD SERVICES, LLC        :
                              :
          Defendant.     :
                              :     **OPINION**
                              :
———————————————————:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendant Wells Fargo & Company and Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss Plaintiff Warren R. Kraft's ("Kraft" or "Plaintiff") Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) (ECF No. 93); and (2) Defendant ServiceLink Field Services, LLC's ("ServiceLink") (collectively with Wells Fargo, "Defendants") Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 92.) Kraft opposes both motions. (ECF Nos. 98 & 102.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Wells Fargo's Motion to Dismiss is **GRANTED** and ServiceLink's Motion to Dismiss is **GRANTED**.

## I.  BACKGROUND

### A.  Factual Background

For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true, considers any document "*integral to or explicitly relied upon in the complaint*," and draws all inferences in the light most favorable to Plaintiff. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). However, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (citing *Schuylkill Energy Res. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)). Additionally, this Court may also consider publicly recorded documents, such as mortgage assignments, records from other courts, and final judgments and writs of executions, which are each self-authenticating. *See* F.R.E. 803(14).

This matter arises from a series of disputes related to Kraft's residence in Middletown, New Jersey (the "Property"),[1] and the subsequent foreclosure proceedings filed against Kraft (the "Foreclosure Action") on September 29, 2006, in the Superior Court of New Jersey, Monmouth County. (ECF No. 86 ¶¶ 24, 27.)[2] Kraft lived on the Property from May 1993 to October 12, 2018,

---

[1] Kraft alleges that "at the time the original verified complaint was filed" the estimated market value of the Property was $709,440.00, and the amount owed on the mortgage was $341,770.78. (ECF No. 86 ¶ 18.)

[2] This Court interpreted the factual allegations in the Amended Complaint to the best of its ability. Nevertheless, this Court notes that the facts are largely disjointed, exceedingly difficult to follow, and often completely bereft of important connectors between crucial facts.

not including a period in which Kraft claims to have "lived and resided" in Columbus, Ohio from October 2014 to December 22, 2015. (*Id.* ¶ 24.)

On or about June 3, 1996, Kraft inherited the Property from his father, Raymond Kraft. (*Id.* ¶ 25.) Raymond Kraft had owned the property jointly with Kraft's ex-wife, Laura Kraft,[3] with whom Raymond Kraft executed a Promissory Note (the "Note") in the amount of $184,000.00 on February 22, 1994, in favor of PNC Mortgage Corporation of America ("PNC"). (ECF No. 1 ¶ 27; ECF No. 15-3.) The Note was secured by a Mortgage (the "Mortgage") in favor of PNC, which was recorded on March 7, 1994, by the Clerk of Monmouth County, New Jersey. (ECF No. 1 ¶ 27; ECF No. 15-4.) On March 3, 1994, the Mortgage was assigned to the Federal National Mortgage Association ("FNMA"), which assigned the Mortgage to Washington Mutual Bank, FA ("Washington Mutual") on November 10, 2006. (ECF Nos. 15-5 and 15-6.) On July 24, 2007, a Final Judgment of Foreclosure was entered in favor of Washington Mutual as a result of Kraft's default on the Mortgage pertaining to the Property. (ECF No. 86 ¶ 44.)

On March 9, 2009, the Mortgage was assigned to Wells Fargo Bank, N.A. (ECF No. 15-13.) Thereafter, Wells Fargo retained ServiceLink to "conduct inspections and provide property field services related to the Property." (ECF No. 86 ¶ 76.)

Kraft contends "Washington Mutual and [] Wells Fargo never had legal authority under New Jersey state law to enforce indebtedness and foreclose on [his] residential property because they never owned or controlled the loan and underlying mortgage debt." (*Id.* ¶ 32.) Instead, Kraft alleges that the assignments to both Washington Mutual and Wells Fargo were invalid "because

---

[3] In or about March 1999, Kraft's ex-wife waived any and all interest she had in Kraft's home as set forth in their judgment of divorce. (*Id.* ¶ 26.)

the original note was lost and never transferred and delivered to the possession of Washington Mutual from FNMA."[4] (*Id.* ¶ 35.)

Kraft claims on June 9, 2011, New Jersey Supreme Court Chief Justice Rabner entered an order requiring that a Certification of Diligent Inquiry[5] be filed and served "in all [New Jersey] foreclosure actions where a default judgment has been entered but no sheriff's foreclosure sale has occurred as of June 9, 2001." (*Id.* ¶ 43.)

On October 20, 2015, an attorney employed by Wells Fargo's counsel, Phelan Hallinan, executed a Certification of Diligent Inquiry. (*Id.* ¶ 46.) Kraft alleges that this Certification of Diligent Inquiry was inadequate and noncompliant, as Phelan Hallinan was provided false, deceptive and misleading representations by Wells Fargo employee Caroline K. Courtney ("Courtney"). (*Id.*) Specifically, Kraft contends that the Certification of Diligent Inquiry falsely represented that Courtney "personally reviewed . . . the original or true copy of the note, mortgage, and recorded assignments." (*Id.* ¶ 48.) Furthermore, Kraft alleges that Courtney never "truthfully reviewed the accuracy and authenticity of the original promissory note," as it was lost and "never delivered to the possession of Washington Mutual and [] Wells Fargo." (*Id.* ¶¶ 48, 59.)

Kraft further alleges that because Wells Fargo never had the legal authority to enforce the indebtedness, nor enter his home, Wells Fargo and ServiceLink engaged in the commission of prohibited conduct "for a period up through six years immediately preceding the commencement of this lawsuit." (*Id.* ¶ 87.) The alleged actions included breaking into Kraft's home and changing

---

[4] Kraft alleges that he "first became aware of the Affidavit of Lost Note," and the fact "that the promissory note was lost in or about July 2017." (*Id.* ¶ 42.)

[5] A Certification of Diligent Inquiry verifies and attests to "the truth, accuracy and authenticity of certain information and documents, including the original promissory note and chain of assignments in the complaints, before a sheriff's sale can take place." (*Id.* ¶ 43.)

the locks, "trash[ing] Plaintiff's home," removing mattresses from bedrooms, moving "the television in the family room to the center of the room," and stealing or removing various items including a framed painting and a small unbroken window. (*Id.* ¶¶ 88, 93, 96, 108.)

Kraft contacted Wells Fargo "in excess of 15-20 times," stating that he was "the owner occupant who live[d] and reside[d] in his home," and "inform[ed] them to stop entering his home." (*Id.* ¶¶ 88, 121.) In addition, Kraft wrote several letters informing Wells Fargo and ServiceLink that he "live[d] and reside[d] in his home," and that therefore, they should "cease and desist from invasions onto his property and into his home." (*Id.* ¶ 113.) Even so, Kraft claims that Wells Fargo and ServiceLink "ignored all of [his] requests." (*Id.* ¶ 124.)

Kraft had numerous encounters with representatives and employees from both Wells Fargo and ServiceLink at the Property. (*Id.* ¶¶ 132, 136, 140.) These encounters included finding "three men standing the front foyer of his home," "two men building a wooden cover over his pool," and "individuals . . . mowing the lawn of [his] home." (*Id.*) Moreover, Kraft alleges the "wooden cover was inadequate and collapsed into the pool causing more damage." (*Id.* ¶ 139.)

Upon returning from Columbus, Ohio, on or about December 22, 2015, Kraft made numerous requests for his mail to be "forwarded from Columbus, Ohio, . . . and delivered to his Middletown home by the U.S. Postal Service." (*Id.* ¶ 43.) "In or about March 2016, [Kraft] spoke with the main carrier on his route . . . and [t]he main carrier said he was not in the system." (*Id.* ¶ 147.) Kraft did not believe the carrier, as he had allegedly received mail at his home address in Middletown. (*Id.*) Subsequently, Kraft made further attempts to fix the "inconsistenc[ies] in the delivery of his mail." (*Id.* ¶ 148.)

On May 2, 2016, at approximately 11:45 pm, "[p]olice forced entry into [Kraft's] home and into the bedroom where he was asleep." (*Id.* ¶ 149.) Kraft alleges that officers eventually asked

Kraft for his identification, and after presenting his New Jersey State Identification Card, he was arrested and charged with trespassing. (*Id.* ¶¶ 153-55.) During the arrest, Kraft claims that an officer stated that "[t]he bank says you are not allowed to be here." (*Id.* ¶ 151.) While detained, another officer informed Kraft that "[t]he bank booted [him] out of the house." (*Id.* ¶ 156.) [6]

Following his arrest, Kraft was released with "a temporary restraint forcing him from his property and home . . . during the pendency of his case." (*Id.* ¶ 157.) On July 18, 2016, the trespass charge "was dismissed by the Honorable James E. Berube, Jr., Middletown Municipal Judge." (*Id.* ¶ 171.) Kraft alleges "Wells Fargo's false, deceptive, and misleading representations to the Middletown police directly caused" his "false arrest." (*Id.* ¶ 175.) On July 18, 2016, following the dismissal of the trespass charge, Kraft went back to live on the Property. (*Id.* ¶ 174.) [7]

## B. Procedural History

On September 20, 2016, Kraft filed a Complaint (the "Complaint") against Wells Fargo, ServiceLink,[8] the Township of Middletown ("Middletown"), Brian O'Callahan ("O'Callahan") (collectively with Middletown, the "Middletown Defendants"),[9] and various other defendants (ECF No. 1.) The Complaint asserted seven causes of action: (1) a § 1983 claim against the Middletown Defendants (Count One); (2) a Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692,

---

[6] Additionally, on May 23, 2016, Kraft alleges he "met and talked with" Gerald J. Massel, Middletown Municipal Prosecutor, who said "[t]he bank says they own the property." (ECF No. 86 at ¶ 159.)

[7] Kraft no longer resides on the Property. (ECF No. 98.)

[8] ServiceLink is the successor in interest to LPS Field Services, Inc., the entity involved in the events in the original Complaint. (ECF No. 33-4.) Black Knight Infoserv., Inc. and Black Knight Management Services, which Kraft also names as defendants, were affiliates of LPS Field Services, Inc. (ECF No. 1.) For convenience, the Court uses "ServiceLink" to refer to each of the related entities.

[9] O'Callahan was improperly pled as "Brian O'Callihan." (*Id.*)

*et seq.* ("FDCPA") claim against Wells Fargo and ServiceLink (Count Two); (3) a property damage claim against Wells Fargo and ServiceLink (Count Three); (4) a defamation claim against Wells Fargo (Count Four); (5) a slander of title claim against Wells Fargo (Count Five); (6) a malicious prosecution claim against Wells Fargo (Count Six); and (7) trespass claims against Wells Fargo and ServiceLink (Count Seven). (*Id.*)

On September 20, 2016, Kraft filed a Motion for a Temporary Restraining Order seeking to enjoin the Middletown Defendants from taking any action to interfere with Kraft's occupancy of the Property. (ECF No. 2.) On September 22, 2016, this Court denied Kraft's motion. (ECF No. 4.) On November 3, 2016, Wells Fargo filed a Motion to Dismiss the Complaint (ECF No. 15), on December 1, 2016, ServiceLink filed a Motion to Dismiss the Complaint (ECF No. 33), and on December 5, 2016, the Middletown Defendants filed a Motion to Dismiss the Complaint. (ECF No. 36). On July 31, 2017, this Court issued an Opinion and Order: denying Wells Fargo's Motion to Dismiss the Complaint in its entirety; granting Wells Fargo's and ServiceLink's Motions to Dismiss Kraft's FDCPA claim; granting the Middletown Defendants' Motion to Dismiss each claim asserted against them; and declining to exercise supplemental jurisdiction over Kraft's state law claims. (ECF Nos. 55 & 56.)

On August 14, 2017, Kraft filed a Motion for Reconsideration of this Court's July 31, 2017 Opinion and Order. (ECF No. 57.) Wells Fargo, ServiceLink, and the Middletown Defendants each opposed the Motion for Reconsideration. (ECF Nos. 58-60.) On March 28, 2018, this Court denied Kraft's Motion for Reconsideration but ordered Kraft be permitted to move to amend his Complaint to cure the pleading deficiencies identified by this Court in its July 31, 2017 Opinion and Order. (ECF Nos. 67 & 68.)

On November 30, 2018, Kraft filed an Amended Complaint against Service Link and Wells Fargo asserting causes of action for: negligence (Count One); conversion (Count Two); defamation against Wells Fargo (Count Three); slander of title against Wells Fargo (Count Four); malicious prosecution against Wells Fargo (Count Five); trespass against Wells Fargo (Count Six); and trespass against ServiceLink (Count Seven). (ECF No. 85.) On December 3, 2018, Kraft filed a "Corrected" Amended Complaint correcting certain typographical and other minor errors. (ECF No. 86.)[10] On December 21, 2018, ServiceLink filed a Motion to Dismiss the Amended Complaint (ECF No. 92) and on December 31, 2018, Wells Fargo filed a Motion to Dismiss the Amended Complaint. (ECF No. 93). On January 22, 2019, Kraft filed an Opposition to ServiceLink's Motion to Dismiss (ECF No. 98), and on January 28, 2019, ServiceLink filed a Reply Brief to Kraft's Opposition to its Motion to Dismiss. (ECF No. 99). On February 6, 2019, Kraft filed an Opposition to Wells Fargo's Motion to Dismiss. (ECF No. 102.)

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

---

[10] The "Corrected" Amended Complaint does not deviate from the original Amended Complaint in any substantive manner. For the purpose of clarity, the "Corrected" Amended Complaint is hereinafter referred to simply as the "Amended Complaint."

of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy*

*Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## III.   DECISION

Wells Fargo argues Kraft's claims should be dismissed because "[d]espite multiple bites at the apple, [Kraft] is still unable to make out a cause of action against Wells Fargo." (ECF No. 93-5 at 5.) Specifically, Wells Fargo contends the causes of action in the Amended Complaint fail to state claims for which relief can be granted and that several claims are barred by the statute of limitations or other common law principles. (ECF No. 93-1 at 9-18.) Similarly, ServiceLink contends Kraft's claims should be dismissed as, *inter alia*, the causes of action are exceedingly vague, improperly pled, and fail to state a claim. (ECF No. 92-1 at 4-11.) This Court addresses each cause of action alleged in turn.

### A.  Negligence (Count One)

Kraft asserts a cause of action against Wells Fargo and ServiceLink for negligence, alleging that Wells Fargo and ServiceLink owed him a duty of care to protect his real and personal property and subsequently breached this duty. (ECF No. 86 ¶¶ 178-87.) Wells Fargo argues Kraft's negligence claim must be dismissed because a lender owes a borrower no legal duty. (ECF No.

93-1 at 9-10.) Similarly, ServiceLink contends the negligence cause of action cannot be sustained as the Amended Complaint contains mere "unsupported factual conclusions" and fails to allege a legal duty owed by ServiceLink to Kraft. (ECF No. 92-1 at 4-7.)

"In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: '[a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages.'" *Polzo v. Cty. of Essex*, 960 A.2d 375, 384 (N.J. 2008) (quoting *Weinberg v. Dinger*, 524 A.2d 366, 378 (N.J. 1987)). "The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). "Under New Jersey law, 'whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" *Holmes*, 598 F.3d at 118 (quoting *Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 829 (N.J 2004)). Moreover, the Third Circuit Court of Appeals has found that a creditor-debtor relationship rarely gives rise to a fiduciary duty. *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988).

Kraft claims that "[a]t all times relevant . . . Wells Fargo and ServiceLink had a duty of reasonable care to [Kraft] to protect [Kraft's] aforesaid real property and personal property from loss, damage, or injury." (ECF No. 86 at ¶ 183.) Kraft alleges that entries by employees and agents of Wells Fargo and ServiceLink "breached [their] duty of reasonable care" and led to "property damage loss." (*Id.* ¶ 185.) [11]

Kraft fails to sufficiently allege that Wells Fargo and ServiceLink owed him an

---

[11] Kraft alleges damage to "the front window next to front door, interior door to the garage, four exterior doors and two garage doors, damaged copper piping in the basement, damaged and cut down several trees in the front and back yards, and damages the pool . . . pool floor, and liners." (ECF No. 86 at ¶ 184.)

independent legal duty outside of its contractual obligations. On the contrary, the Amended Complaint merely states that both Wells Fargo and ServiceLink had a duty of reasonable care to protect Kraft's property without providing any basis for such a duty. (*Id.* ¶¶ 183, 185.) However, the applicable case law clearly demonstrates that a creditor-debtor relationship rarely gives rise to an independent fiduciary duty. *See Paradise Hotel Corp.*, 842 F.2d at 53 (holding that creditor-debtor relationships "rarely are found to give rise" to additional duties between the parties).

Furthermore, without an independent duty, Kraft's claim for a tort remedy based on negligence fails due to the economic loss doctrine. *Holmes*, 598 F.3d at 118. The economic loss doctrine bars claims for negligence between parties to a contract. *SRC Const. Corp. of Monroe v. Atl. City Hous. Auth.*, 935 F. Supp 2d 796, 800 (D.N.J. 2013). "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 460 (D.N.J. 2009) (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278 (N.J. 2002)). "[M]ere failure to fulfill obligations contained in the parties' contract, including the implied duty of good faith and fair dealing, in not actionable in tort." *Skypala*, 655 F. Supp. 2d at 460. As such, "[w]ithout an independent duty imposed by law, Plaintiff['s] negligence claim is barred." *Rost* v. *Avelo Mortg., LLC*, No. 15-3254, 2015 WL 6737026, at *5 (D.N.J. Nov. 3, 2015). Accordingly, Defendants' Motions to Dismiss with respect to Kraft's negligence claims are **GRANTED**.

### B. Conversion of Personal Property (Count Two)

Kraft asserts a cause of action against Wells Fargo and ServiceLink for conversion of personal property, alleging that Wells Fargo, through ServiceLink and its agents, entered his property and removed several of his personal items. (ECF No. 86 ¶¶ 188-96.) Wells Fargo argues

the Amended Complaint "merely parrots the elements of a claim for conversion," and provides no details regarding the purported conversion, and therefore, should be dismissed. (ECF No. 93-1 at 14.) Similarly, ServiceLink argues the Amended Complaint presents mere allegations and fails to "show that any of the alleged items were taken or damaged by ServiceLink," and therefore, should be dismissed. (ECF No. 92 at 11.)

Under New Jersey law, "conversion is defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Die Casters Int'l v. United States*, No. 08-4402, 2009 WL 3229857, at *4 (D.N.J. Sept. 30, 2009) (quoting *LaPlace v. Briere*, 962 A.2d 1139, 1144 (N.J. App. Div. 2009)). "Conversion is an intentional tort in that the defendant must have intended 'to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *LaPlace*, 962 A.2d at 1145. The elements of conversion are: (1) "the property and right to immediate possession thereof belong to the plaintiff" and (2) "the wrongful act of interference with that right by the defendant." *Latef v. Cicenia*, No. 5474-13T2, 2015 WL 10458543, at *5 (N.J. App. Div. 2016) (citations omitted).

Here, Kraft contends that both Wells Fargo and ServiceLink are liable for conversion as they removed various items from Kraft's home, and therefore, "permanently depriv[ed]" Kraft of such items. (ECF No. 86 ¶ 184.) Kraft details various items that have allegedly been removed and/or stolen, but his allegations lack any sort of specificity regarding the alleged removal. (*Id.*) For instance, Kraft is "unsure of the exact occasion" in which the purported conversions occurred, instead alleging a two-year time window in which the tort may have taken place. (ECF No. 98 at 17.) As such, the Court finds that Kraft does not present sufficient factual matter to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, Defendants' Motions

to Dismiss with respect to Kraft's conversion claims are **GRANTED**.

## C. Defamation (Count Three)

Kraft asserts a cause of action against Wells Fargo for defamation, Count Three, alleging that Wells Fargo defamed him by informing the Middletown Police Department that it owns the property and Kraft has been "booted" from his own house. (ECF No. 86 ¶¶ 197-209.) Wells Fargo argues that Kraft's defamation is barred by New Jersey's litigation privilege, is time barred by the applicable statute of limitations, and fails to state a claim for which relief can be granted as Kraft has not pled any specific statement that could be considered injurious to his reputation. (ECF No. 93-1 at 11-14.)

The elements of a defamation claim under New Jersey law are: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *DeAngelis v. Hill*, 180 N.J. 1, 847 A2.d 1261, 1267-68 (2004). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). "To determine whether a statement is defamatory, a court looks to the fair and natural meaning [to be given to the statement] by reasonable persons of ordinary intelligence." *Id.* (citation omitted).

Here, Kraft alleges that the elements of defamation are satisfied due to false comments made by Wells Fargo to "employees of the Township of Middletown, including members of the Middletown Township police force," which accused him of criminal conduct. (ECF No. 86 at 20.) These false comments included: (1) "[t]he bank owns and has title to the [Property]," (2) "[Kraft] was not allowed on the [P]roperty or in the home," and (3) "[t]he bank booted [Kraft] out of the

house." (*Id.* at 24.) The Court is not persuaded by Kraft's argument as the Amended Complaint merely presents legal conclusions and fails to specifically allege that an employee of Wells Fargo made the purported comments.

The comments which Kraft alleges rise to the level of defamation solely mention "[t]he bank," while failing to specify which bank, as well as which employee, made the comments. (*Id.*) Thus, it is unclear to which entity the phrase "[t]he bank" pertains, as multiple entities were assigned the Mortgage after the Note was executed in 1994. (ECF No. 1 ¶ 27.) Moreover, Kraft fails to claim any factual assertion that demonstrates which employee made the purported comments to the various Middletown employees, nor when such comments were made. (ECF No. 86.) Without any factual assertations to support Kraft's claim, the Court finds that the Kraft has failed to adequately plead a claim for defamation. Accordingly, Wells Fargo's Motion to Dismiss against Kraft with respect to his cause of action for defamation is **GRANTED**.

### D.  Slander of Title (Count Four)

Kraft asserts a cause of action for slander of title against Wells Fargo claiming Wells Fargo made false statements concerning Kraft's title to the Property and "imputed criminal behavior." (ECF No. 86 ¶¶ 210-22.) New Jersey courts define "the tort of slander of title as a publication of a false assertation concerning plaintiff's title, causing special damages." *Lone v. Brown*, 489 A.2d 1192, 1195 (N.J. App. Div. 1985) (citing *Andrew v. Deshler*, 45 N.J.L. 167, 169-172 (E. & A. 1883)). "Malice, expressed or implied, is an essential element of the cause of action for slander of title." *Rogers Carl Corp. v. Moran*, 246 A.2d 750, 753 (N.J. App. Div. 1968) (citing *Frega v. N. New Jersey Mtg. Ass'n*, 143 A.2d 885, 887 (N.J. App. Div. 1958)). "Malice is defined as the intentional commission of a wrongful act without just cause or excuse." *Lone*, 489 A.2d at 1195. However, "[a] rival claimant is privileged to disparage another's property in land by an honest

assertion of an inconsistent legally protected interest in himself." *Moran*, 246 A.2d at 753 (N.J.

App. Div. 1968) (citing *Restatement of Torts*, § 647 at 364-65 (1938)). For example, as the Court

in *Moran* explained:

> If the words are spoken by a stranger, the law presumes malice. But
> if the party is himself interested in the matter and announces the
> defect of title, *bona fide*, either for the purpose of protecting his own
> interest or preventing the commission of a fraud, the legal
> presumption of malice is rebutted.

*Moran*, 246 A.2d at 753 (citations omitted).

Here, Kraft alleges that Wells Fargo made multiple false assertations[12] to Middletown

Police Officers which concerned Kraft's title to the Property and led to "special damages of being

arrested and incarcerated." (ECF No. 102 at 10-14.) Moreover, Kraft contends that Wells Fargo

knew the statements were false, and therefore, "acted with malice and with intent to harm [him]."

(*Id.* ¶ 201.)

Kraft has failed to allege facts sufficient to satisfy each of the required elements of a slander

of title claim. Rather, Kraft has merely presented legal conclusions. For example, the Complaint

states that:

> Upon information and belief, Defendant Wells Fargo knew [the
> purported statements] not to be true at the time they were made and
> . . . made them with reckless indifference as to their truth or falsity
> and . . . acted with malice and with intent to harm

(ECF No. 86 ¶ 216.)

However, Kraft neglects to provide any support for these assertions. (*Id.*) In fact, in his

Opposition, Kraft merely reiterates the paragraph cited above, without providing any additional

---

[12] These false assertations are the same comments discussed in the defamation claim. As discussed
prior, these comments do not specifically mention Wells Fargo by name, and instead, use the term
"[t]he bank." (ECF No. 86 ¶ 228.)

background information. (ECF No. 102 at 15-16.) Without any factual assertion to back such a claim, Kraft has failed to demonstrate that Wells Fargo acted with malice beyond the speculative level. *Twombly*, 550 U.S. at 555. Furthermore, any argument regarding a presumption of malice is rebutted due to Wells Fargo's interest in the Property. *See Moran*, 246 A.2d at 753. As such, Kraft's claim for slander of title fails to allege the essential element of malice.

Additionally, Kraft fails to provide any factual allegation demonstrating that the purported false comments were published. *See Lone*, 489 A.2d at 1195. Rather, the Complaint merely alleges "Wells Fargo ***stated***, maliciously and without cause" the purported false statements. (ECF No. 86 ¶ 212) (emphasis added). Furthermore, in his Opposition, Kraft simply changes the language of the Complaint and contends he "has pled special damages caused by Defendant Wells Fargo's Slander of Titled [sic ***published*** to the Middletown Police Officers." (ECF No. 102 at 18.) (emphasis added).Without providing any factual allegation which demonstrates that the purported comments were published, nor any factual allegation to support a claim that Wells Fargo acted with malice, the Court finds that the Complaint failed to allege each essential element of a claim for slander of title. Therefore, Wells Fargo's Motion to Dismiss against Kraft with respect to his claim for slander of title is **GRANTED**.

### E. Malicious Prosecution (Count Five)

Kraft asserts a cause of action against Wells Fargo for malicious prosecution, alleging that Wells Fargo "caused and/or was responsible for the Middletown Police" arresting him for trespass and subsequently instituting a criminal action against him. (ECF No. 86 ¶¶ 223-30.) In order to sustain a claim for malicious prosecution, a plaintiff must plead: "(1) that the criminal action was instituted by the defendants against the plaintiff, (2) that it acted with malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorable to the

plaintiff." *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1160 (N.J. App. Div. 2004) (quoting *Myrick v. Resorts Int'l Casino & Hotel*, 726 A.2d 262, 265 (N.J. App. Div. 1999)). All elements must be plead "or the claim must fail." *Id.* (citations omitted).

"[M]alicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime." *Myrick*, 726 A.2d at 266 (quoting *Lind v. Schmid*, 337 A.2d 365, 367 (N.J. 1974)). The New Jersey Supreme Court has held "that a company reporting suspected criminal activity to the authorities cannot be liable for malicious prosecution when the authorities decide to prosecute the suspected criminals." *Myrick*, 726 A.2d at 266 (citing *MacLaughlin v. Lehigh Valley R.R. Co.*, 108 A. 309, 311 (N.J. 1919)). New Jersey courts have reasoned that this is the appropriate approach as "it is the police [or municipality], [and] not the [corporate defendant], [which] had instituted the prosecution." *Myrick*, 726 A.2d at 267.

Kraft argues Wells Fargo "caused and/or was responsible for the Middletown Police instituting the aforesaid the trespass charge and ensuing criminal proceeding," due to alleged comments made by unnamed Wells Fargo employees to Middletown Police Officers. (ECF No. 86 ¶ 226.) However, regardless of the alleged comments, a company cannot be liable for reporting suspected criminal activity if authorities decide to prosecute the suspected criminal. *See Myrick*, 726 A.2d at 266-67. Kraft's contentions run directly afoul of the principle established in *Myrick*. Moreover, Kraft has not made any allegations that such comments affected Middletown's independent decision to prosecute Kraft for trespass. Therefore, Wells Fargo's Motion to Dismiss against Kraft with respect to its cause of action for malicious prosecution is **GRANTED**.

### F.  Trespass to Real Property (Counts Six and Seven)

Kraft alleges a trespass to real property claim against Wells Fargo, Count Six, asserting that Wells Fargo representatives "repeatedly entered and intruded" on the Property, thereby "resulting in damage and loss to [Kraft's] real and personal property." (ECF No. 86 ¶¶ 231-46.) Kraft also alleges a trespass to real property claim against ServiceLink, Count Seven, on an identical theory as that against Wells Fargo. (*Id.* ¶¶ 247-64.) Additionally, Kraft contends Wells Fargo and ServiceLink are vicariously liable for the acts of one another, as well as of their employees. (*Id.* ¶¶ 233, 249.) Wells Fargo and ServiceLink argue they are not liable for trespass as Kraft fails to prove that any of their representatives' visits to the Property were "unauthorized" based on the terms of the Mortgage, and therefore, did not constitute a trespass. (ECF Nos. 92 & 93.)

"An action for trespass arises upon the *unauthorized* entry onto another's property, real or personal." *Pinkowski v. Township of Montclair*, 691 A.2d 837, 843 (N.J. App. Div. 1997) (citing *State v. Wouters*, 177 A.2d 299, 304 (N.J. App. Div. 1962)) (emphasis added). "A trespass upon property, whether real or personal, is actionable, although the damage to the owner is inappreciable." *Spiegel v. Evergreen Cemetery Co.*, 117 N.J.L 90, 93-94 (N.J. 1936).

New Jersey courts have held that the "unambiguous terms" of a mortgage can provide authorization for a lender to "change the locks and secure the property," among other things. *Deutsche Bank Nat'l Trust Co. v. Patrick*, No. A-2270-17T3, 2018 WL 6613737, at *4 (N.J. App. Div. Dec. 18, 2018) (citing *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 314 (N.J. App. Div. 2017)). For example, in *Deutsche Bank*, the mortgagee was provided a right to enter the property in order to "protect its interests, in the event of a default or in the event the property became abandoned." *Deutsche Bank*, 2018 WL 6613737, at *1. Following a default, the mortgagee

hired an inspection company which reported that the property was vacant and appeared to be abandoned. *Id.* at *2-3. This report was partially based on the fact that the utilities had been discontinued. *Id.* As such, the court in *Deutsche Bank* found that the mortgagee "was entitled to change the locks and secure the property" and granted judgment accordingly. *Id.* at *4.

Here, as in *Deutsche Bank*, paragraph seven of the Mortgage provides protection to the lender against a trespass action should the borrower fail to perform the obligations imposed therein. (ECF No. 92-4 ¶ 7.) Specifically, paragraph seven of the Mortgage states:

> If the Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property . . . then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.

(*Id.*)

The language in the mortgage is so unambiguous as to allow Wells Fargo to enter and secure the Property. *See Deutsche Bank*, 2018 WL 6613737, at *4. Paragraph seven contemplates that Wells Fargo was able to "do and pay for whatever is necessary to protect the value of the property" after Kraft defaulted on the Mortgage. (ECF No. 92-4 ¶ 7.) Moreover, Kraft fails to allege any entry that occurred prior to the initiation of the foreclosure proceeding concerning the Property in 2006. (ECF No. 86 ¶ 27.) As such, the Court finds that any purported entry was authorized by the terms of the Mortgage as Kraft failed to perform the agreements of the Security instrument, by defaulting, and each entry occurred during a period in which there was a legal proceeding that affected the Lender's rights. (*Id.*) Therefore, Defendants' Motions to Dismiss the trespass claims are **GRANTED**.

Based on the procedural history of this matter, it is evident that any further amendment of the Amended Complaint would be futile as Kraft has been afforded multiple opportunities to sufficiently state a claim.

## IV. CONCLUSION

For the reasons set forth above: Wells Fargo's Motion to Dismiss is **GRANTED** with respect to Counts One, Two, Three, Four, Five, Six; ServiceLink's Motion to Dismiss is **GRANTED** with respect to Counts One, Two, and Seven; and the Amended Complaint is **DISMISSED WITH PREJUDICE**.

Date: July 31, 2019

/s/ Brian R. Martinotti
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE